LRM, Airman First Class,
U.S. Air Force, Appellant

v.

Joshua E. KASTENBERG, Lieutenant Colonel,
U.S. Air Force, Military Judge, Appellee

and

Nicholas E. DANIELS,
Airman First Class, U.S. Air Force, Real Party in Interest

No. 13-5006
App. Misc. Dkt. No. 2013-05

United States Court of Appeals for the Armed Forces

Argued June 11, 2013

Decided July 18, 2013

BAKER, C.J., delivered the opinion of the Court, in which
ERDMANN, J., and EFFRON, S.J., joined.  STUCKY, J., filed a
separate opinion, concurring in part and dissenting in part and
in the result.  RYAN, J., filed a dissenting opinion, in which
STUCKY, J., joined as to Part A.

Counsel

For Appellant:  Colonel Kenneth M. Theurer, (argued); Major
Christopher J. Goewert, Major Matthew D. Talcott, and Major R.
Davis Younts (on brief).

For Appellee:  Major Ryan N. Hoback (argued).

For Real Party in Interest:  Dwight H. Sullivan, Esq. (argued);
Captain Christopher D. James and Captain Danko Princip (on
brief).

Amici Curiae:

    For the United States:  Major Tyson D. Kindness (argued);
Colonel Don M. Christensen and Gerald R. Bruce, Esq. (on brief).

For the Army Defense Appellate Division:  Colonel Patricia A. Ham, Lieutenant Colonel Jonathan F. Potter, and Captain Matthew M. Jones.

For the Navy-Marine Corps Appellate Defense Division: Captain Paul C. LeBlanc, JAGC, USN, and Captain Jason R. Wareham, USMC.

For the National Crime Victim Law Institute:  Margaret Garvin, Esq., Rebecca S. T. Khalil, Esq., and Sarah LeClair, Esq.

For the U.S. Marine Corps Defense Services Organization: Colonel John G. Baker, USMC.

For the Air Force Trial Defense Division:  Colonel Donna Marie Verchio.

For Protect Our Defenders:  Peter Coote, Esq.


Military Judge: Joshua E. Kastenberg


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Chief Judge BAKER delivered the opinion of the Court.

The Air Force Judge Advocate General (JAG) certified three issues for review by this Court:

I.  WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED BY HOLDING THAT IT LACKED JURISDICTION TO HEAR A1C LRM'S PETITION FOR A WRIT OF MANDAMUS.

II.  WHETHER THE MILITARY JUDGE ERRED BY DENYING A1C LRM THE OPPORTUNITY TO BE HEARD THROUGH COUNSEL THEREBY DENYING HER DUE PROCESS UNDER THE MILITARY RULES OF EVIDENCE, THE CRIME VICTIMS' RIGHTS ACT AND THE UNITED STATES CONSTITUTION.

III. WHETHER THIS HONORABLE COURT SHOULD ISSUE A WRIT OF MANDAMUS.

BACKGROUND

On October 16, 2012, Airman First Class (A1C) Nicholas Daniels (Real Party in Interest) was charged with raping and sexually assaulting A1C LRM in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2006). Lieutenant Colonel (Lt Col) Joshua E. Kastenberg (Appellee) was detailed to the case as military judge. The Real Party in Interest was arraigned at Holloman Air Force Base, New Mexico, and elected trial by enlisted and officer members.

Captain (Capt) Seth Dilworth was appointed as special victims' counsel for LRM. In his formal notice of appearance, Capt Dilworth stated that LRM had "standing involving any issues arising under [Military Rules of Evidence (M.R.E.)] 412, 513, and 514 in which she is the patient or witness as the subject of

3

the motion." Capt Dilworth noted that his formal involvement in the court-martial would "be limited to asserting A1C [LRM]'s enumerated rights as a victim of crime under federal law and [M.R.E.] 412, 513, and 514." He requested that the court direct counsel to provide LRM with copies of related motions. Trial counsel and trial defense counsel did not object to LRM receiving copies of the motions, but trial defense counsel opposed Capt Dilworth's presence or participation at the evidentiary hearings. Before the arraignment hearing, LRM received copies of defense motions to admit evidence under M.R.E. 412 and 513.

Initially during the arraignment hearing, Capt Dilworth indicated that he did not intend to argue at any future M.R.E. 412 or 513 motions hearings. Later during the same hearing, Capt Dilworth argued that there may be instances where LRM's interests in the motions hearings were not aligned with the Government, in which case Capt Dilworth asked the court to reserve LRM's right to present an argument. The military judge treated this request as a "motion in fact."

In a judicial ruling, the military judge limited LRM's right to be heard to factual matters, finding that standing "denotes the right to present an argument of law before a court, which is fundamentally different than the opportunity to be heard." The military judge then found that LRM had no standing,

through counsel or otherwise, to motion the court for relief in the production of documents, and that Capt Dilworth could not argue evidentiary matters in LRM's interest. The military judge concluded that "the prospect of an accused having to face two attorneys representing two similar interests [is] sufficiently antithetical to courts-martial jurisprudence" and would "cause a significant erosion in the right to an impartial judge in appearance or a fair trial."

LRM filed a motion to reconsider, asking for relief in the form of production and provision of documents, and that the military judge grant LRM "limited standing to be heard through counsel of her choosing in hearings related to M.R.E. 412, M.R.E. 513, [Crime Victims' Rights Act, 18 U.S.C. § 3771 (CVRA)], and the United States Constitution." The military judge denied the motion for reconsideration in full.

LRM filed a petition for extraordinary relief in the nature of a writ of mandamus and petition for stay of proceedings, but the CCA concluded that it lacked jurisdiction to review LRM's petition for extraordinary relief. After the United States Air Force Criminal Court of Appeals (CCA) denied LRM's motion for reconsideration en banc, the Air Force JAG certified three issues for review by this Court.

JURISDICTION

Jurisdiction is a question of law that this Court reviews de novo.  United States v. Ali, 71 M.J. 256, 261 (C.A.A.F. 2012).

As a preliminary matter, this Court has statutory jurisdiction to review the decision of the CCA under Article 67, UCMJ, 10 U.S.C. § 867 (2006).  Article 67(a)(2), UCMJ, provides that this Court shall review the record in "all cases reviewed by a Court of Criminal Appeals which the Judge Advocate General orders sent to the Court of Appeals for the Armed Forces for review."

In United States v. Curtin, this Court considered the definition of a "case" as used in Article 67(a)(2), UCMJ.  44 M.J. 439 (C.A.A.F. 1996), cited with approval in United States v. Dowty, 48 M.J. 102, 107 (C.A.A.F. 1998).  In Curtin, the military judge ruled that trial counsel's subpoenas duces tecum for the financial statements of the accused's wife and her father were administrative, and that the appropriate United States district court was the proper forum for challenging the subpoenas.  Id. at 440.  The Air Force JAG filed a certificate for review of a CCA decision denying the government's petition for extraordinary relief in the form of a writ of mandamus.  Id. This Court held that it had jurisdiction, and determined that the "definition of 'case' as used within that statute includes a

6

'final action' by an intermediate appellate court on a petition for extraordinary relief." Id. (citing United States v. Redding, 11 M.J. 100, 104 (C.M.A. 1981)).

Similarly, in this case the CCA took a final action on a petition for extraordinary relief when it denied LRM's writ-appeal petition. Thus, as in Curtin, this Court has jurisdiction over the certificate submitted by the JAG pursuant to Article 67(a)(2), UCMJ, as we would in the case of a writ-appeal.

Subject-Matter Jurisdiction

The CCA erred by holding that it lacked jurisdiction to hear LRM's petition for a writ of mandamus. The All Writs Act, 28 U.S.C. § 1651 (2006), and Article 66, UCMJ, 10 U.S.C. § 866 (2006), establish the CCA's jurisdiction. The All Writs Act grants the power to "all courts established by act of Congress to issue all writs necessary and appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Extraordinary writs serve "to confine an inferior court to a lawful exercise of its prescribed jurisdiction." Bankers Life & Casualty Co. v. Holland, 346 U.S. 379, 382 (1953). "[M]ilitary courts, like Article III tribunals, are empowered to issue extraordinary writs under the All Writs Act." United States v. Denedo, 556 U.S. 904, 911 (2009).

7

LRM v. Kastenberg, No. 13-5006/AF

The All Writs Act is not an independent grant of jurisdiction, nor does it expand a court's existing statutory jurisdiction. Clinton v. Goldsmith, 526 U.S. 529, 534-35 (1999). Rather, the All Writs Act requires two determinations: (1) whether the requested writ is "in aid of" the court's existing jurisdiction; and (2) whether the requested writ is "necessary or appropriate." Denedo v. United States, 66 M.J. 114, 119 (C.A.A.F. 2008) (internal quotation marks omitted). In the context of military justice, "in aid of" includes cases where a petitioner seeks "to modify an action that was taken within the subject matter jurisdiction of the military justice system." Id. at 120. A writ petition may be "in aid of" a court's jurisdiction even on interlocutory matters where no finding or sentence has been entered in the court-martial. See, e.g., Hasan v. Gross, 71 M.J. 416 (C.A.A.F. 2012); Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 25 (1943).

To establish subject-matter jurisdiction, the harm alleged must have had "the potential to directly affect the findings and sentence." Ctr. for Constitutional Rights v. United States (CCR), 72 M.J. 126, 129 (C.A.A.F. 2013) (citing Hasan, 71 M.J. 416). There is no jurisdiction to "adjudicate what amounts to a civil action, maintained by persons who are strangers to the courts-martial, asking for relief . . . that has no bearing on any findings and sentence that may eventually be adjudged by the

8

court-martial." Id. The CCA's holding that the present case "does not directly involve a finding or sentence that was –- or potentially could be imposed –- in a court-martial proceeding," does not accurately reflect this analysis.

Under the appropriate analysis, LRM prevails. The petition invited the CCA to evaluate whether the military judge can limit the right to be heard under M.R.E. 412 and 513 by precluding LRM from presenting the basis for a claim of privilege or exclusion, with or without counsel, during an ongoing general court-martial. The military judge's ruling has a direct bearing on the information that will be considered by the military judge when determining the admissibility of evidence, and thereafter the evidence considered by the court-martial on the issues of guilt or innocence –- which will form the very foundation of a finding and sentence. Furthermore, unlike "strangers to the courts-martial," CCR, 72 M.J. at 129, LRM is the named victim in a court-martial seeking to protect the rights granted to her by the President in duly promulgated rules of evidence, namely to a claim of privilege under M.R.E. 513 and a right to a reasonable opportunity to be heard under M.R.E. 412(c)(2) and 513(e)(2). Indeed, this Court has reversed court-martial convictions based on erroneous M.R.E. 412 evidentiary rulings. See, e.g., United States v. Ellerbrock, 70 M.J. 314, 321 (C.A.A.F. 2011) (reversing rape conviction after finding that evidence of the

victim's prior extramarital affair was improperly excluded under

M.R.E. 412).  LRM is not seeking any civil or administrative

relief.  Cf. Goldsmith, 526 U.S. at 533 (challenging an

administrative separation proceeding, rather than a court-

martial).  Rather, she is seeking her right to be heard pursuant

to the M.R.E.  Thus, the harm alleged has "the potential to

directly affect the findings and sentence," and the CCA erred by

holding that it lacked jurisdiction.  See CCR, 72 M.J. at 129.

Standing

LRM's position as a nonparty to the courts-martial, see

Rule for Courts-Martial (R.C.M.) 103(16), does not preclude

standing.  There is long-standing precedent that a holder of a

privilege has a right to contest and protect the privilege.

See, e.g., CCR, 72 M.J. 126 (assuming that CCR had trial level

standing to make request); United States v. Wuterich, 67 M.J.

63, 66-69 (C.A.A.F. 2008) (assuming standing for CBS in part

under R.C.M. 703); United States v. Harding, 63 M.J. 65

(C.A.A.F. 2006) (assuming standing for victim's mental health

provider); United States v. Johnson, 53 M.J. 459, 461 (C.A.A.F.

2000) (standing for nonparty challenge to a subpoena duces tecum

or a subpoena ad testificandum during an Article 32, UCMJ, 10

U.S.C. § 832 (2006), pretrial investigation); ABC, Inc. v.

Powell, 47 M.J. 363, 364 (C.A.A.F. 1997) (standing under First

Amendment); Carlson v. Smith, 43 M.J. 401 (C.A.A.F 1995)

(summary disposition) (granting a writ of mandamus where the real party in interest did not join petitioners, but rather was added by this Court as a respondent).

Limited participant standing has also been recognized by the Supreme Court and other federal courts. See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580 (1980) (standing created by First Amendment right); Church of Scientology v. United States, 506 U.S. 9, 11, 17 (1992) (standing created by attorney-client privilege). In particular, "[f]ederal courts have frequently permitted third parties to assert their interests in preventing disclosure of material sought in criminal proceedings or in preventing further access to materials already so disclosed." United States v. Hubbard, 650 F.2d 293, 311 n.67 (D.C. Cir. 1980); see, e.g., United States v. Antar, 38 F.3d 1348, 1350 (3d Cir. 1994); In re Subpoena to Testify Before Grand Jury Directed to Custodian of Records, 864 F.2d 1559, 1561 (11th Cir. 1989); Doe v. United States, 666 F.2d 43, 45 (4th Cir. 1981); Anthony v. United States, 667 F.2d 870, 872-73 (10th Cir. 1981); In re Smith, 656 F.2d 1101, 1102-05, 1107 (5th Cir. 1981); United States v. Briggs, 514 F.2d 794, 796, 799 (5th Cir. 1975).

Ripeness

Finally, this issue is ripe for review. The military judge's ruling limits LRM's right to be heard to factual

matters, preventing her from making legal arguments while invoking her legal privilege under M.R.E. 513.

Furthermore, while LRM's counsel initially indicated at the arraignment hearing that he did not intend to argue at a future motions hearing, noting that LRM had not received any documents, discovery, or court filings with respect to such hearings, counsel asked the military judge to reserve that right. The military judge treated this request as a "motion in fact." In the judicial ruling, the military judge specified whether counsel had standing to represent LRM during applicable hearings arising from the M.R.E. at trial as one of the issues before the court-martial, and ultimately denied the motion to grant standing. Accordingly, LRM interpreted the military judge's ruling as finding that she "does not have standing to be represented by counsel during applicable hearings arising from the military rules of evidence at trial." In the motion to reconsider, LRM asked for relief in the form of production and provision of documents, and that the military judge grant LRM "limited standing to be heard through counsel of her choosing in hearings related to M.R.E. 412, M.R.E. 513, CVRA, and the United States Constitution." The military judge denied the motion for reconsideration in full.

Thus, the issue of whether LRM has limited standing to be heard through counsel in hearings related to M.R.E. 412 and 513

12

comes to this Court in the form of a challenge by a limited participant to a concrete ruling by a military judge in an adversarial setting. See United States v. Chisholm, 59 M.J. 151, 153 (C.A.A.F. 2003) ("In the absence of a challenge by a party to a concrete ruling by a military judge in an adversarial setting, we conclude that consideration of Issue I under the circumstances of the present case would be premature."). The parties have argued, and the military judge has addressed, the relevant legal issues. The issue is ripe for review by this Court.

## SUBSTANTIVE ISSUES

Construction of a military rule of evidence, as well as the interpretation of statutes, the UCMJ, and the R.C.M., are questions of law reviewed de novo. United States v. Matthews, 68 M.J. 29, 35-36 (C.A.A.F. 2009); United States v. Lopez de Victoria, 66 M.J. 67, 73 (C.A.A.F. 2008).

The military judge erred by determining at the outset of the court-martial, during arraignment proceedings and before any M.R.E. 412 or 513 evidentiary hearings, that LRM would not have standing to be represented through counsel during applicable hearings arising from the M.R.E. The President has expressly stated the victim or patient has a right to a reasonable opportunity to attend and be heard in evidentiary hearings under M.R.E. 412 and 513. M.R.E. 412(c)(2) provides that, before

admitting evidence under the rule, the military judge must conduct a hearing where the "alleged victim must be afforded a reasonable opportunity to attend and be heard." See also M.R.E. 513(e)(2) ("The patient shall be afforded a reasonable opportunity to attend the hearing and be heard . . . ."). M.R.E. 513(a) also provides that a patient has the privilege to refuse to disclose confidential communications covered by the psychotherapist-patient privilege. A reasonable opportunity to be heard at a hearing includes the right to present facts and legal argument, and that a victim or patient who is represented by counsel be heard through counsel. This is self-evident in the case of M.R.E. 513, the invocation of which necessarily includes a legal conclusion that a legal privilege applies.

Statutory construction indicates that the President intended, or at a minimum did not preclude, that the right to be heard in evidentiary hearings under M.R.E. 412 and 513 be defined as the right to be heard through counsel on legal issues, rather than as a witness. Both M.R.E. 412 and 513 permit the parties to "call witnesses, including the alleged victim [or patient]." M.R.E. 412(c)(2); M.R.E. 513(e)(2). However, in addition to providing that the victim or patient may be called to testify as a witness on factual matters, the rules also grant the victim or patient the opportunity to "be heard." Id. Furthermore, every time that the M.R.E. and the R.C.M. use

14

the term "to be heard," it refers to occasions when the parties can provide argument through counsel to the military judge on a legal issue, rather than an occasion when a witness testifies. See, e.g., R.C.M. 806(d) Discussion; R.C.M. 917(c); R.C.M. 920(c); R.C.M. 920(f); R.C.M. 1005(c); R.C.M. 1102(b)(2); M.R.E. 201(e).

This interpretation of a reasonable opportunity to be heard at a hearing is consistent with the case law of this Court and other federal courts. In Carlson, for example, this Court provided extraordinary relief to two sexual assault victims who had sought to prevent "unwarranted invasions of privacy" and to protect their rights under M.R.E. 412, Article 31, UCMJ, 10 U.S.C. § 831, and other privileges recognized by law. 43 M.J. 401. The Court ordered that the victims "will be given an opportunity, with the assistance of counsel if they so desire, to present evidence, arguments and legal authority to the military judge regarding the propriety and legality of disclosing any of the covered documents." Id. (emphasis added). While Carlson is a summary disposition, this Court "has profited from guidance offered in prior summary dispositions." United States v. Diaz, 40 M.J. 335, 339-40 (C.M.A. 1994); see also Hicks v. Miranda, 422 U.S. 332, 344-45 (1975) (holding that "lower courts are bound by summary decisions by" the Supreme Court); United States v. Sanchez, 44 M.J. 174, 177 (C.A.A.F.

15

1996) (citing Carlson).  Similarly, in United States v. Klemick, the Navy-Marine Corps CCA found that the military judge did not abuse his discretion in rulings on M.R.E. 513 matters.  65 M.J. 576, 581 (N-M. Ct. Crim. App. 2006).  During the evidentiary hearing, the patient opposed trial counsel's motion "through counsel who entered an appearance in the court-martial on her behalf for this limited purpose," and the military judge considered the patient's brief and argument.  Id. at 578.

Furthermore, while the military judge suggests that LRM's request is novel, there are many examples of civilian federal court decisions allowing victims to be represented by counsel at pretrial hearings.  Although not precedent binding on this Court, in the United States Court of Appeals for the Fifth Circuit, for example, victims have exercised their right to be reasonably heard regarding pretrial decisions of the judge and prosecutor "personally [and] through counsel."  In re Dean, 527 F.3d 391, 393 (5th Cir. 2008).  The victims' "attorneys reiterated the victims' requests" and "supplemented their appearances at the hearing with substantial post-hearing submissions."  Id.; see also Brandt v. Gooding, 636 F.3d 124, 136-37 (4th Cir. 2011) (motions from attorneys were "fully commensurate" with the victim's "right to be heard.").  Similarly, in United States v. Saunders, at a pretrial Fed. R. Evid. 412(c)(1) hearing, "all counsel, including the alleged

victim's counsel, presented arguments." 736 F. Supp. 698, 700 (E.D. Va. 1990). In United States v. Stamper, the district court went further and, in a pretrial evidentiary hearing, allowed counsel for "all three parties," including the prosecution, defense, and victim's counsel, to examine witnesses, including the victim. 766 F. Supp. 1396, 1396 (W.D.N.C. 1991).

While M.R.E. 412(c)(2) or 513(e)(2) provides a "reasonable opportunity . . . [to] be heard," including potentially the opportunity to present facts and legal argument, and allows a victim or patient who is represented by counsel to be heard through counsel, this right is not absolute. A military judge has discretion under R.C.M. 801, and may apply reasonable limitations, including restricting the victim or patient and their counsel to written submissions if reasonable to do so in context. Furthermore, M.R.E. 412 and 513 do not create a right to legal representation for victims or patients who are not already represented by counsel, or any right to appeal an adverse evidentiary ruling. If counsel indicates at a M.R.E. 412 or 513 hearing that the victim or patient's interests are entirely aligned with those of trial counsel, the opportunity to be heard could reasonably be further curtailed.

Based on the foregoing discussion, the military judge's ruling in the present case runs counter to the M.R.E., and is in

error for three reasons.  First, by prohibiting LRM from making legal arguments, the military judge improperly limited LRM's right to be heard on the basis for the claim of privilege or admissibility.  M.R.E. 513(a) creates a privilege to refuse to disclose confidential communications, which necessarily involves a legal judgment of whether the privilege applies, as well at the opportunity for argument so that a patient may argue for or against the privilege.  Neither M.R.E. 412 nor 513 preclude the victim or patient from arguing the law.

Second, the military judge's ruling, made during the arraignment hearing process and prior to any M.R.E. 412 or 513 proceedings, is a blanket prohibition precluding LRM from being heard in M.R.E. 412 or 513 proceedings through counsel without first determining whether it would be unreasonable under the circumstances.  Instead, the military judge based his ruling on his flawed conclusion that LRM was precluded from making legal argument.  While LRM's right to be heard through counsel is not absolute, LRM has a right to have the military judge exercise his discretion on the manner in which her argument is presented based on a correct view of the law.

Third, the military judge cast the question as a matter of judicial impartiality.  It is not a matter of judicial partiality to allow a victim or a patient to be represented by counsel in the limited context of M.R.E. 412 or 513 before a

military judge, anymore than it is to allow a party to have a lawyer.  The military judge's ruling was thus taken on an incorrect view of the law, and is in error.

REMEDY

As a threshold matter, the Government argues that, even though the Judge Advocate General has certified three issues to this Court, this Court is not authorized to act with respect to matters of law when the CCA has not acted with respect to the same matters of law.  The relevant text of Article 67, UCMJ, states:

> (a) The Court of Appeals for the Armed Forces shall review the record in --
>
> . . . .
>
> (2) all cases reviewed by a Court of Criminal Appeals which the Judge Advocate General orders sent to the Court of Appeals for the Armed Forces for review;
>
> . . . .
>
> (c) In any case reviewed by it, the Court of Appeals for the Armed Forces may act only with respect to the findings and sentence as approved by the convening authority and as affirmed or set aside as incorrect in law by the Court of Criminal Appeals.  <u>In a case which the Judge Advocate General orders sent to the Court of Appeals for the Armed Forces, that action need be taken only with respect to the issues raised by him</u>. In a case reviewed upon petition of the accused, that action need be taken only with respect to issues specified in the grant of review.  The Court of Appeals for the Armed Forces shall take action only with respect to matters of law.

Emphasis added. The first clause of Article 67(c), UCMJ, does not confine the second clause in the way the Government proposes. In United States v. Leak, for example, this Court considered that:

> One possible reading of the language in subsection (c) of the statute is that because the lower court did not affirm the finding with respect to Appellant's rape charge, or set it aside as incorrect in law, this Court is without authority to "act." Under this reading, this Court would be obliged to "review" the Judge Advocate General's certified question, but we would have no statutory authority to "act."

61 M.J. 234, 239 (C.A.A.F. 2005). The Court concluded that "Article 67 does not preclude review of questions of law certified by Judge Advocates General where the courts of criminal appeals have set aside a finding on the ground of factual insufficiency." Id. at 242. Similarly, in the present case, even though the CCA did not reach the substantive issues, this Court may still take action with respect to all of the certified issues, including whether this Court should issue a writ of mandamus.

Furthermore, prudential concerns, such as the impending court-martial start date, the parties' interest in the speedy resolution of these issues, and the JAG's certification of all three issues, counsel the Court to reach all the substantive issues and proceed to grant relief at this time, if appropriate. In addition, the military judge's ruling raises issues of law of

first impression which could apply in all M.R.E. 412 and M.R.E. 513 hearings.  Absent any guidance from this Court and with no other meaningful way for these issues to reach appellate review, every military judge could interpret the scope and extent of a victim's rights differently, so that a victim or patient's rights vary from courtroom to courtroom.  Under these circumstances, this Court should not decline to address substantive issues which are properly before it, and which present a novel legal question regarding the interpretation of the M.R.E. affecting an ongoing court-martial.  As in Wuterich, "[i]n view of the pending court-martial proceedings, and because this case involves an issue of law that does not pertain to the unique factfinding powers of the Court of Criminal Appeals, we [should] review directly the decision of the military judge without remanding the case to the lower court."  67 M.J. at 70.  "[N]either justice nor judicial economy would be served by delaying the [court-martial] pending remand to the Court of Criminal Appeals."  Powell, 47 M.J. at 364.

However, while this Court may appropriately take action at this time, a writ of mandamus is not the appropriate remedy.  At the lower court, LRM petitioned for a writ of mandamus directing the military judge "to provide an opportunity for [LRM] to be heard through counsel at hearings conducted pursuant to [M.R.E.] 412 and 513, and to receive any motions or accompanying papers

21

reasonably related to her rights as those may be implicated in hearings under [M.R.E.] 412 and 513." The military judge's ruling must be based on a correct view of the law. M.R.E. 412 and M.R.E. 513 create certain privileges and a right to a reasonable opportunity to be heard on factual and legal grounds, which may include the right of a victim or patient who is represented by counsel to be heard through counsel. However, these rights are subject to reasonable limitations and the military judge retains appropriate discretion under R.C.M. 801, and the law does not dictate the particular outcome that LRM requests.

## CONCLUSION

Certified questions I and II are answered in the affirmative. Certified question III is answered in the negative. The current record is returned to the Judge Advocate General of the Air Force for remand to the military judge for action not inconsistent with this opinion.

STUCKY, Judge (concurring in part and dissenting in part and in the result):

While I agree with the majority that we have subject matter jurisdiction in this case, I nonetheless agree with the discussion of standing in Part A of Judge Ryan's dissent.  I would therefore dismiss the petition for lack of standing and would not reach either the second or the third certified issues.

RYAN, Judge, with whom Stucky, J., joins as to Part A (dissenting):

A.

Whether it is more irregular that the Judge Advocate General of the Air Force (TJAG) "certified" these issues or that the Court chooses to answer them is a close call, particularly in light of the Supreme Court's recent decision in Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1155 (2013) (holding that the respondents lacked standing "because they cannot demonstrate that the future injury they purportedly fear is certainly impending," and, therefore, cannot establish a sufficient injury-in-fact), and the plain language of Article 67(a)(2) and Article 69, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 867(a)(2), 869 (2006).

The putative victim in this pending court-martial, LRM, through her attorney, asked the military judge to order that she be provided copies of motions related to the admission of evidence under Military Rules of Evidence (M.R.E.) 412, 513, and 514, and that the court reserve to her attorney the right to argue on those motions, although, at that point, her attorney admitted that he "[did] not intend to do so." Trial and defense counsel did not object to LRM receiving informational copies of any motions filed

pursuant to those rules.  While the military judge found that LRM lacked standing to motion the court for production of documents or be heard through counsel, the Government avers that trial counsel provided LRM, through her attorney, with (1) copies of defense motions to admit evidence pursuant to M.R.E. 412 and 513, (2) the Government's response to the defense motion to admit evidence under M.R.E. 412, and (3) other trial-related documents.[1]

Based on the foregoing, at this point in the proceedings, LRM -- having no intention to speak or legal arguments to raise -- has not suffered any actual harm. She alleges no "certainly impending" harm, Clapper, 133 S. Ct. at 1155, and does not allege any divergence between her interests and those of the Government, or that such a divergence in interests is likely, let alone certain, to occur at a later stage in the proceedings.  The absence of any actual or imminent injury to LRM, a nonparty to the pending court-martial below, makes TJAG's unprecedented use of his certification power to certify interlocutory issues to this Court all the more perplexing.

---

[1] In the Government's Response to Judicial Order -- Special Victims' Counsel, the Government avers that it did not provide LRM with a copy of its response to defense motion to admit evidence under M.R.E. 513.

While we are assuredly not an Article III court, we have, up until now, understood ourselves to be bound by the requirement that we act only when deciding a "case" or "controversy."  See U.S. Const. art. III, §2; United States v. Johnson, 53 M.J. 459, 462 (C.A.A.F. 2000) (holding that the appellant lacked standing to object to an unlawful subpoena issued to secure the attendance of his wife as a witness at an Article 32, UCMJ, 10 U.S.C. § 832 (2006), hearing where the appellant "was neither deprived of a right nor hindered in presenting his case"); United States v. Jones, 52 M.J. 60, 63-64 (C.A.A.F. 1999) (holding that the appellant lacked standing to challenge the violation of a witness's Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2006), or Fifth Amendment rights and explaining that "[t]he requirement is designed to allow a moving party with a personal stake in the outcome to enforce his or her rights" (quotation marks and citations omitted)).  "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006) (quotation marks and citations omitted). And paramount to enforcing that jurisdictional threshold is

the requirement that, <u>inter alia</u>, a party have standing.
<u>See</u> <u>Raines v. Byrd</u>, 521 U.S. 811, 818 (1997).

Integral to standing is a showing of injury-in-fact; "an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" <u>Clapper</u>, 133 S. Ct. at 1147 (citing <u>Monsanto Co. v. Geertson Seed Farms</u>, 130 S. Ct. 2743, 2752 (2010)). This requirement ensures that federal courts resolve only actual disputes where people are being harmed in fact, leaving hypothetical issues of law to be resolved where they should be, by the coordinate executive and legislative branches of government. <u>See</u> <u>Hollingsworth v. Perry</u>, 133 S. Ct. 2652, __ (2013), slip op. at 6 ("The doctrine of standing . . . 'serves to prevent the judicial process from being used to usurp the powers of the political branches.'" (quoting <u>Clapper</u>, 133 S. Ct. at 1146)); <u>Allen v. Wright</u>, 468 U.S. 737, 752 (1984) ("[T]he law of Art. III standing is built on a single basic idea -- the idea of separation of powers.").

The issues before us are not justiciable because LRM has not been presently harmed and any future injury "is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'" <u>Clapper</u>, 133 S. Ct. at 1143. Per the representations of

both parties, LRM either has or will be permitted to have the documents she requested, and her attorney stated that he does not intend to speak on LRM's behalf, as LRM's interests are aligned with the Government's.  Which begs the question:  at this point, what, if any, injury would be redressed by a favorable decision from this Court?  On these facts, I can see no injury to be remedied, rendering any decision from this Court purely advisory and outside the "judicial Power" of Article III federal courts.  See U.S. Const. art. III, §2.  On this ground alone the certification should be dismissed.

B.

Additional grounds exist for dismissal of this certification.  By acting on the present certificate, the majority approves a road map for evading the ordinary limitations on our review of interlocutory issues.  LRM, a nonparty to the litigation who has not suffered any actual injury or even a reasonable likelihood of future injury, had interlocutory issues involving hypothetical future harm to her rights certified by TJAG to this Court via Article 67(a)(2), UCMJ.  This unprecedented use of Article 67(a)(2) was made despite the fact that to have its interlocutory issues considered, the Government would have to meet the stringent requirements of Article 62, UCMJ, 10 U.S.C. § 862

5

(2006), and an accused would have to satisfy both the jurisdictional requirements of Article 67, UCMJ, in order to invoke the power of the All Writs Act, 28 U.S.C. § 1651(a) (2006) (allowing this Court to issue "all writs necessary or appropriate in aid of [its] respective jurisdiction"), and the extraordinary burdens needed to meet the criteria for an extraordinary writ. See, e.g., Hasan v. Gross, 71 M.J. 416, 416-17 (C.A.A.F. 2012) ("Applying the heightened standard required for mandamus relief, [and] conclud[ing] that based on a combination of factors, a reasonable person, knowing all the relevant facts, would harbor doubts about the military judge's impartiality.").

Further exacerbating the impropriety of the situation is that the instant certification was made in the early stages of a criminal case; TJAG's actions having ground the accused's proceedings to a halt ostensibly to determine the contours of a right of a witness who has identified no injury-in-fact and no divergence between her interests and those of the Government. Considering that "[t]he exercise of prosecutorial discretion is a prerogative of the executive branch of government," United States v. O'Neill, 437 F.3d 654, 660 (7th Cir. 2006) (citing Wayte v. United States, 470 U.S. 598, 607 (1985)), and the ordinary state

of affairs in our adversarial system where the government, not TJAG, is the accused's adversary, TJAG's decision to certify the question whether this nonparty should be allowed to effectively intervene in this criminal proceeding is all the more remarkable.

Nor is the certification proper under any provision of the UCMJ.  As relevant to this issue, Article 69(d), UCMJ, provides that a Court of Criminal Appeals (CCA) may review (1) "any court-martial case which (A) is subject to action by [TJAG] under this section, and (B) is sent to the [CCA] by order of [TJAG]; and, (2) any action taken by [TJAG] under this section in such case."  Article 69(a)-(c), UCMJ, provides the circumstances in which TJAG may modify or set aside the findings and sentence in a court-martial case. Nowhere do these sections provide TJAG with authority to intermeddle on an interlocutory issue that is not case dispositive, let alone the authority to certify an interlocutory issue to this Court.

Yet despite the lack of statutory authority to intrude at this juncture of the case, TJAG "certified" the issues before this Court pursuant to Article 67(a)(2), UCMJ, which presents yet another problem.  Article 67(a)(2), UCMJ, provides that "[this Court] shall review the record in all cases reviewed by a [CCA] which [TJAG] orders sent to [this

7

Court] for review."  In reviewing such "cases," this Court may "act only with respect to the findings and sentence as approved by the convening authority and as affirmed or set aside as incorrect in law by the [CCA]."  Article 67(c), UCMJ; see also Ctr. for Constitutional Rights v. United States, 72 M.J. 126, 128-30 (C.A.A.F. 2013).

But there have been no findings or sentence entered here, and in requesting review of this particular interlocutory ruling, TJAG has not properly certified a "case" under Article 67(a)(2), UCMJ.  In United States v. Redding, 11 M.J. 100, 102-04 (C.M.A. 1981), the Court clearly and fully considered whether TJAG had properly certified a "case" when he requested review of a trial judge's ruling "which rejected a command determination that a military lawyer requested by the accused . . . was unavailable" and where review of that ruling had been initiated directly in the Court of Military Review by a petition for extraordinary relief after the trial judge effectively dismissed the case for failure to make the requested military lawyer available.

The Court directly addressed whether the proceedings before it constituted a "case," and, therefore, were properly certifiable, and explicitly distinguished the military judge's ruling from "an intermediate or

8

interlocutory order" solely because "[the ruling] end[ed] court-martial proceedings on the charges; it is, therefore, not an intermediate or interlocutory order but a final decree."  Id. at 104.  The Court reasoned that because "the posture of the proceedings . . . was tantamount to a final disposition of the case," TJAG had properly certified a "case" within the meaning of Article 67(b)(2), UCMJ (now Article 67(a)(2), UCMJ).  Id. (internal quotation marks and citation omitted).

Given the plain language of Articles 67 and 69, UCMJ, Redding at best expresses the outermost limits of TJAG's certification power, allowing him to certify an interlocutory issue only where it is "tantamount to a final disposition" of a case.  Id.  The majority, however, ignores both the plain statutory language and this precedent and instead, in cursory fashion, relies on United States v. Curtin, 44 M.J. 439 (C.A.A.F. 1996), a case which cited Redding to hold, without discussion, and contrary to both the plain language of Article 67, UCMJ, itself and the actual holding in Redding, that a "case" within Article 67(a)(2) "includes a 'final action' by an intermediate appellate court on a petition for extraordinary relief," quoting Redding, 11 M.J. at 104.  See Curtin, 44 M.J. at 440; LRM v. Kastenberg, __ M.J. __, __ (6-7) (C.A.A.F.

9

2013). Redding narrowly held that "proceedings of the kind in issue are certifiable" and distinguished between action by a military judge that amounts to a "final decree," which could be certified because "[s]uch action ends court-martial proceedings on the charges," from a ruling that is "interlocutory in nature," which could not be certified. Redding, 11 M.J. at 104 (internal quotation marks and citation omitted).[2]

Where, as here, an interlocutory ruling is not "tantamount to a final disposition of the case," id., the proper channels of review of the issue include (1) review in the ordinary course of appellate review by the CCA under Article 66, UCMJ, (2) an appeal by the Government subject

---

[2] Moreover, in responding to the Government's argument that "this Court is not authorized to act with respect to matters of law when the CCA has not acted with respect to the same matters of law," LRM, __ M.J. at __ (19), the majority misapplies United States v. Leak, 61 M.J. 234 (C.A.A.F. 2005), in holding that, here, as in Leak, this Court may act on the substantive issues "even though the CCA did not reach [them]." LRM, __ M.J. at __ (20). Leak, however, more narrowly held that this Court could review "a lower court's determination of factual insufficiency for application of correct legal principles," Leak, 61 M.J. at 241, and the majority's passing extension of that holding to the present case is unwarranted. See United States v. Nerad, 69 M.J. 138, 147 (C.A.A.F. 2010) ("[T]he power to review a case under Article 67(a)(2), UCMJ, includes the power to order remedial proceedings . . . to ensure that the lower court reviews the findings and sentence approved by the convening authority in a manner consistent with a 'correct view of the law.'" (quoting Leak, 61 M.J. at 242)).

to the limitations of Article 62, UCMJ, or (3) a petition for extraordinary relief from the interlocutory ruling requested by a person with standing to challenge the ruling.  See Article 66, UCMJ; Article 62, UCMJ; 28 U.S.C. § 1651(a).

It is entirely unclear why this Court would adopt a more expansive interpretation of "case" in this context, contrary to the plain language of the statute and unsupported by legislative history.  The Supreme Court, in those limited instances where its jurisdiction is mandatory, see, e.g., 15 U.S.C. § 29 (particular class of civil antitrust cases), has been most exacting in requiring that the case is actually one it must decide.  See Heckler v. Edwards, 465 U.S. 870, 876 (1984) (interpreting 28 U.S.C. § 1252 (repealed 1988), to provide mandatory jurisdiction in the Supreme Court only where "the holding of federal statutory unconstitutionality is in issue"); Palmore v. United States, 411 U.S. 389, 395-96 (1973) (holding that an appeal as of right would not lie to the Supreme Court under 28 U.S.C. § 1257 (amended 1988), in the context of a District of Columbia court's upholding a local statute against constitutional attack, and noting that "[j]urisdictional statutes are to be construed with precision and with fidelity to the terms by which Congress

has expressed its wishes; and we are particularly prone to accord strict construction of statutes authorizing appeals to this Court") (internal quotation marks and citations omitted).

What the instant certification amounts to is an improper attempt by TJAG to shortcut proper procedure without statutory authority to do so at this juncture and force this Court to review an interlocutory ruling that (1) does not come before us in the form of a petition for extraordinary relief, (2) is neither case dispositive nor an adjudged finding or sentence, and (3) does not involve an injury-in-fact to anyone (other than perhaps the accused's right to a speedy trial). This is not an effort that should be rewarded. Article 67(a)(2), UCMJ, which requires us to decide certified issues in "cases," should be strictly construed to require just that, and all interlocutory routes to this Court should require parties with standing and issues that qualify for review under either Article 62, UCMJ, or the All Writs Act and Article 67, UCMJ. By presently certifying issues pursuant to Article 67(a)(2), UCMJ, TJAG circumvented (1) the specific requirements for a Government appeal under Article 62, UCMJ; (2) the heightened scrutiny required for an extraordinary writ by either LRM or the accused; and (3)

this Court's discretion over whether to grant review of this issue if, in the future, LRM suffers or is reasonably certain to suffer injury-in-fact and seeks a writ appeal.

TJAG may employ both congressional and executive routes to answer interlocutory questions definitively where his curiosity cannot await resolution of a particular case and where those claiming a right have no injury-in-fact such that they could seek a writ themselves.  Permitting certification of interlocutory issues that are neither justiciable nor case dispositive in any sense distorts the limited role of both TJAG and this Court within the military justice system.  For these additional reasons, I would dismiss the certification as improper, and I respectfully dissent.