# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39141**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Brandon M. ANDERSON**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 28 February 2018

————————————

*Military Judge:* Lyndell M. Powell.

*Approved sentence:* Bad-conduct discharge, confinement for 3 months, and reduction to E-2. Sentence adjudged 21 April 2016 by GCM convened at Davis-Monthan Air Force Base, Arizona.

*For Appellant:* Major Patricia Encarnación Miranda, USAF; Major Lauren A. Shure, USAF.

*For Appellee:* Colonel Katherine E. Oler, USAF; Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major Mary Ellen Payne, USAF; Major Meredith L. Steer, USAF; Captain Michael T. Bunnell, USAF; Gerald R. Bruce, Esquire.

Before HARDING, SPERANZA, and HUYGEN, *Appellate Military Judges*.

Senior Judge HARDING delivered the opinion of the court, in which Judges SPERANZA and HUYGEN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

HARDING, Senior Judge:

Appellant was court-martialed for domestic violence committed against his spouse, SR. In total, Appellant was charged with 11 specifications: 2 specifications of sexual assault by causing bodily harm in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920,[1] and 9 specifications of assault consummated by a battery in violation of Article 128, UCMJ, 10 U.S.C. § 928. A general court-martial composed of a military judge found Appellant, contrary to his pleas, guilty of six specifications of assault consummated by a battery.[2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for three months, and reduction to the grade of E-1. The convening authority limited the reduction in grade to E-2, but otherwise approved the sentence adjudged.

Appellant raises two issues on appeal: (1) whether his trial defense counsel were ineffective[3] and (2) whether the Government's failures to pay him upon his release from confinement and for the period of accrued leave amounted to unlawful post-trial punishment.[4] We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant initially met SR, a citizen of the United Kingdom, through an online dating website. SR later traveled to Arizona under a visa waiver program that permitted SR to remain in the United States for up to 90 days. As the end of the 90-day waiver period drew near, SR and Appellant agreed to get married in order to permit SR to lawfully remain in the United States and continue their relationship. They were married in Las Vegas, Nevada, on 23 August 2014. During their marriage, Appellant and SR developed a pattern of arguing, after which SR would leave Appellant's house and stay with friends for days or weeks at a time, and then reconciling. Some of their verbal arguments escalated and became physical. At Appellant's urging, their marriage was annulled

---

[1] Appellant was acquitted of both specifications of this Charge.

[2] Appellant was acquitted of two specifications of this Charge. One specification was withdrawn and dismissed after arraignment.

[3] Appellant raises this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[4] Although Appellant has not raised the issue of post-trial delay on appeal, the period of time in this case between announcement of sentence and final action by the convening authority exceeded 120 days and is presumptively unreasonable. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Consequently, we are required to conduct a due process review of this post-trial delay. *Id*.

in late April 2015. During that same timeframe, SR consulted with an immigration attorney and then reported that Appellant physically abused her—first to the Air Force Family Advocacy Program and then to the Air Force Office of Special Investigations.

## II. DISCUSSION

### A. Effectiveness of Counsel

Prior to the court-martial, character letters written by Appellant's former girlfriends and other women with whom he had relationships were received by the trial defense counsel. Each letter generally offered an opinion that Appellant was not aggressive or abusive toward women. The trial defense counsel weighed the impact of other adverse information that admission of the character letters might place before the fact-finder against their limited value as positive character evidence. After doing so, the trial defense counsel decided not to offer them in Appellant's defense. Appellant now asserts that he would have been acquitted of all charges and specifications had the military judge been provided with the letters. Appellant further asserts he was denied effective assistance of counsel. We disagree.

The Sixth Amendment guarantees Appellant the right to effective assistance of counsel. U.S. CONST. amend. VI; *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984).

> We review allegations of ineffective assistance of counsel de novo and utilize the following three-part test to determine whether the presumption of competence has been overcome: 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?
>
> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

The record in Appellant's case, to include the declarations of his trial defense counsel, refutes Appellant's ineffective assistance of counsel allegation.[5] While Appellant is correct in stating that his trial defense counsel opted not to offer evidence of his character to show that he was not abusive or aggressive toward women, their explanation for not doing so was eminently reasonable and their level of advocacy was well within the performance standards ordinarily expected of fallible lawyers.

The trial defense counsel were specifically concerned that admission of the character letters would "open the door" to evidence that Appellant had used vulgar language in reference to his own mother, evidence that was not otherwise admitted for any purpose. Indeed, opposing counsel is permitted, on a good-faith basis, to test the foundation for opinion testimony by asking any number of "have you heard" or "did you know" questions of the witness regarding matters that would tend to undermine the opinion for the character trait being offered. We note that, in addition to asking whether the opinion witnesses knew the vulgar term that Appellant used against his mother, trial counsel could have asked about any other statements made by Appellant to SR that could have been used to assess his character for abuse of or aggression toward women.

Text messages admitted as evidence demonstrated a pattern of verbal abuse of SR by Appellant. Other evidence established Appellant, when angry at his mother, had broken a picture frame she had left for him and, when angry at SR, had kicked a hole in a door and damaged her cellular phone. When SR confronted Appellant with an allegation of physical abuse via text messages, Appellant acknowledged the abuse and apologized, rather than deny it. Given that this evidence was already before the fact-finder, the trial defense counsel determined the character letters would be minimally helpful at best. Because of the potential that admission of the character letters would have placed more adverse information before the fact-finder, the trial defense counsel's tactical decision not to offer the letters was reasonable.

Furthermore, Appellant's trial defense counsel considered whether the letters, provided by women with whom Appellant had engaged in intimate relationships, might make it obvious that Appellant was involved in sexual relationships with more than one woman at one time. In particular, one letter evidenced an extra-marital affair occurring close in time to an argument between

---

[5] Having applied the principles announced in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997), and considered the entire record of Appellant's trial, we find we can resolve the issues raised by Appellant without additional fact-finding.

Appellant and SRand could have indirectly corroborated and lent credibility to SR's claims of both physical and sexual assault as a result of that argument.

Even if the trial defense counsel's representation was ineffective as alleged by Appellant, we find no reasonable probability that the opinion testimony from his former girlfriends would have resulted in different findings. It was likely that the cross-examination of the character witnesses would have shaken the foundations for those opinions and that evidence of the uncharged misconduct of Appellant involving SR would have provided direct rebuttal. More importantly, we recognize, as did the trial defense counsel, that the over-whelmingly negative impact of Appellant's acknowledgement and non-denial of his physical abuse of SR likely dwarfed any fleeting positive effect of the letters.

Accordingly, we find Appellant's trial defense counsel were not ineffective. Appellant's counsel were presumed to be competent and Appellant failed to overcome that presumption.

## B. Non-payment of Pay and Allowances

Appellant does not challenge the legality or appropriateness of the approved sentence. Instead, he takes issue with the decisions or inactions of military officials, including those in personnel, finance, and his unit leadership, that resulted in the non-payment of his pay and allowances upon his release from confinement and for his accrued leave. Appellant alleges he is being "effectively and improperly punished by the Government, who is denying him the pay he is legally entitled to." As we discuss is greater detail below, we find the non-payments are administrative matters collateral to the sentence approved by the convening authority and thus outside our jurisdiction. Having reviewed the record, we find no evidence that the non-payments were the product of an intent to punish Appellant.

As the non-payments upon his release from confinement and for his accrued leave do not concern the legality or appropriateness of the approved sentence, we must determine whether we have jurisdiction to grant relief. Jurisdiction is a question of law we review de novo. *Randolph v. HV*, 76 M.J. 27, 29 (C.A.A.F. 2017) (quoting *LRM v. Kastenberg*, 72 M.J. 364, 367 (C.A.A.F. 2013)). "The burden to establish jurisdiction rests with the party invoking the court's jurisdiction[.]" *Id.* at 29 (quoting *United States v. LaBella*, 75 M.J. 52, 53 (C.A.A.F. 2015)). Military trial and appellate courts, like all federal courts, are courts of limited jurisdiction. *United States v. Wuterich*, 67 M.J. 63, 70 (C.A.A.F. 2008). "They possess only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The scope and meaning of Article 66(c), UCMJ, 10 U.S.C. § 866(c), the source of this court's authority, is a matter of statutory interpretation, which,

as a question of law, is reviewed de novo. *United States v. Schloff*, 74 M.J. 312, 313 (C.A.A.F. 2015) (citations omitted). Article 66(c), UCMJ, establishes the jurisdiction of a military court of criminal appeals (CCA) as follows:

> In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.

10 U.S.C. § 866(c).

Appellant, relying primarily on *Unites States v. Gay,* 75 M.J. 264 (C.A.A.F. 2016), contends this court has jurisdiction to remedy the Government's failures to pay Appellant because Article 66(c), UCMJ, grants broad discretion to determine which part of a sentence "should be approved." While we agree that CCAs do have considerable discretion, that discretion is not unlimited.

In *Gay,* the Court of Appeals for the Armed Forces (CAAF) held this court "did not abuse its discretion when it exercised its Article 66(c) sentence reassessment authority for post-trial confinement conditions despite its conclusion that the conditions did not rise to a violation of the Eighth Amendment or Article 55." *Id.* at 269. In doing so, the CAAF also made clear that the authority to grant sentence-appropriateness relief is not unlimited and, specifically, a CCA is not empowered to grant relief for every condition of post-trial confinement of which the CCA disapproves. Rather, a CCA is authorized by Article 66(c), UCMJ, to grant relief for sentence appropriateness if it finds a "legal deficiency in the post-trial process." *Id.* In *Gay*, the legal deficiency resulted in improper solitary confinement and "conditions of confinement [that] were more severe than what [appellant] should have experienced." *Id.* (alteration in original).

In light of *Gay,* we considered in *United States v. Buford*, ___ M.J. ___, No. ACM 39087, 2017 CCA LEXIS 762, at *2 (A.F. Ct. Crim. App. 19 Dec. 2017), whether lack of payment for accrued leave, due upon appellate leave under Article 76a, UCMJ, 10 U.S.C. § 876(a), was an issue within our jurisdiction. We noted that "the authority validated in *Gay* was rooted and limited to a legal deficiency that *directly impacted a component of the sentence*." *Id.* at *9. *Gay,* however, did not recognize unlimited authority under Article 66(c), UCMJ, for a CCA to grant sentencing relief, including relief for errors collateral to the court-martial process. We further observed that we "may review the actions of military officials to ensure the severity of the monetary components of a sentence are not unlawfully increased." *Buford*, 2017 CCA LEXIS 762, at *7. Finally, we found that the non-payment for accrued leave to be an administrative

matter collateral to the sentence approved by the convening authority and that "Article 66(c), UCMJ, does not grant this court jurisdiction over a pay dispute absent a nexus to the approved sentence." *Id.* at \*2.

### 1. Non-payment After Appellant's Release From Confinement

We consider whether we have jurisdiction over the non-payment of pay and allowances after Appellant was released from confinement. To do so, we must first determine what, if any, nexus exists between the non-payment and the court-martial sentence.

As of the date Appellant filed his appellate brief and declaration, he had not been paid for the period of duty beginning the day of his release from confinement (5 July 2016) to the day he began appellate leave (12 September 2016). Appellant began serving the adjudged sentence of three months of confinement on 21 April 2016. Because his adjudged sentence also included a bad-conduct discharge, Article 58b, UCMJ, required forfeiture of his pay and allowances during the period of his confinement. On 14 June 2016, while still in confinement, Appellant reached his expiration of term of service (ETS) and his pay entitlement stopped.[6]

On 5 July 2016, Appellant was released from confinement and returned to duty with his former squadron. According to his declaration, Appellant contacted the base finance office on 15 July 2016 when he failed to receive mid-month pay on that day. Appellant was informed that the system incorrectly reflected that he was "in confinement status." Finance personnel also told Appellant that the finance office could not change his duty status and that it could take a year or more before he received any pay. Appellant then informed his first sergeant of his pay problem. Although Appellant's first sergeant contacted the finance office on his behalf, the information provided by Appellant indicates his "in confinement" duty status remained unchanged.

Appellant's duty status is not the only problem with his personnel record affecting his pay. As noted above, Appellant's ETS was 14 June 2016 and expired while Appellant was still in confinement. Each of Appellant's Leave and Earnings Statements for the period from July 2016 through June 2017 continued to reflect 14 June 2016 as Appellant's ETS. "All servicemembers lose their entitlement to pay and allowances upon expiration of their enlistment contract." *United States v. Fischer*, 61 M.J. 415, 419 (C.A.A.F. 2005)). As of 15 June 2016, the first day after Appellant's ETS, his personnel record indicated he was no longer entitled to pay and allowances, regardless of his confinement status. Because the no-pay problem after Appellant's release from confinement is attributable to his expired ETS, this is not a case of misapplying Article 58b,

---

[6] Appellant was serving a six-year term of enlistment that began on 15 June 2010.

UCMJ. There is no nexus between the non-payment and the approved sentence. We find the non-payment after Appellant's release from confinement to be an administrative matter collateral to the sentence approved by the convening authority and thus outside our jurisdiction.

### 2. Non-payment for Accrued Leave

The convening authority ordered in the action that "[u]nless competent authority otherwise directs, [Appellant] will be required, under Article 76a, UCMJ, 10 U.S.C. § 876a, to take leave pending the completion of appellate review." When presented with an option to receive a lump-sum payment for the accrued leave or to "use" the leave, Appellant elected the latter, or to "[r]eceive pay and allowances during the period of accrued leave, then continue on unpaid required excess leave."[7] Despite his election, Appellant never received pay and allowances for the leave.

The factual background for non-payment for accrued leave in Appellant's case is strikingly similar to that in *Buford*. Issues with the personnel record impeded payment in both cases. As in *Buford*, we find the non-payment for accrued leave an administrative matter collateral to the sentence approved by the convening authority and thus outside our jurisdiction.

### 3. Punitive Intent

Appellant contends the non-payment of his pay and allowances constitutes illegal post-trial punishment. In *Buford*, we held that a bare claim of illegal punishment, absent some evidence of intent to subject an appellant to illegal post-trial punishment, did not establish jurisdiction over collateral pay issues. *Id.* at \*10. Here, Appellant has failed to present any evidence that any member of his command or other military official withheld or denied his pay in order to increase the severity of his sentence and impose illegal post-trial punishment. Therefore, we find no intent to punish that might create jurisdiction for this otherwise administrative collateral matter.

## C. Post-Trial Delay

After the announcement of sentence, 122 days elapsed before the convening authority took final action. We considered the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), and whether the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Appellant claims no legally cognizable prejudice from the delay and we find none. Given the minimal delay of two days, we find no adverse effect on the

---

[7] Excess leave is also referred to as "appellate leave."

public's perception of the fairness and integrity of the military justice system. Therefore, we find no due process violation.

We nonetheless considered whether relief under Article 66(c), UCMJ, 10 U.S.C. § 866(c), and pursuant to *Tardif* is appropriate. *United States v. Tardif,* 57 M.J. 219, 224 (C.A.A.F. 2002). In doing so, we were guided by factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016),[8] with no single factor being dispositive. After considering the entirety of the post-trial processing, we conclude no exercise of our Article 66(c), UCMJ, authority is warranted here.

### III. CONCLUSION

The findings of guilt and the sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

JULIE L. ADAMS
Acting Deputy Clerk of the Court

---

[8] These factors include: (1) how long the delay exceeded the standards set forth in *Moreno*; (2) what reasons, if any, the Government set forth for the delay and whether there is any evidence of bad faith or gross indifference to the overall post-trial processing of this case; (3) whether there is nonetheless evidence of harm (either to the appellant or institutionally) caused by the delay; (4) whether the delay has lessened the disciplinary effect of any particular aspect of the sentence and whether relief is consistent with the dual goals of justice and good order and discipline; (5) whether there is any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation; and (6) whether, given the passage of time, this court can provide meaningful relief in this particular situation.