*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**UNITED STATES**
Appellant

**v.**

**Michael J. BROWN, First Sergeant**
United States Marine Corps, Appellee

**No. 20-0288**
Crim. App. No. 201900050

Argued September 29, 2020—Decided February 12, 2021

Military Judge: Roger E. Mattioli

For Appellant: *Lieutenant Colonel Nicholas L. Gannon*, USMC (argued); *Major Kerry E. Friedewald*, USMC, and *Lieutenant Jennifer Joseph*, JAGC, USN (on brief).

For Appellee: *Lieutenant Michael W. Wester*, JAGC, USN (argued).

Judge SPARKS delivered the opinion of the Court, in which Judge MAGGS, and Senior Judge EFFRON, joined. Judge OHLSON filed a separate dissenting opinion, in which Chief Judge STUCKY joined.

———————

Judge SPARKS delivered the opinion of the Court.

This matter is before us as a result of a petition for extraordinary relief filed by Appellee pursuant to the All Writs Act, 28 U.S.C. § 1651(a). In his petition for extraordinary relief in the nature of a writ of mandamus or writ of prohibition, Appellee, inter alia, asked the United States Navy-Marine Corps Court of Criminal Appeals to remove the military judge for bias. The lower court found that it had potential jurisdiction to entertain Appellee's writ petition pursuant to Article 69(d), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 869(d) (2012). Ultimately, the lower court granted Appellee's writ in part and denied in part. The Judge Advocate General (TJAG) of the Navy then certified the following issue pursuant to Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2018): "Did the lower court err in finding that it had potential jurisdiction?" We answer the certified issue in the negative and hold that the lower court

had potential jurisdiction pursuant to Article 69(d), UCMJ, with respect to consideration of Appellee's writ petition under the All Writs Act.

**Background**

A special court-martial consisting of officer and enlisted members convicted Appellee, contrary to his pleas, of abusive sexual contact and disorderly conduct, in violation of Articles 120 and 134, UCMJ, 10 U.S.C. §§ 920, 934 (2012). The members sentenced Appellee to a reduction in pay grade from E-8 to E-7.

Prior to acting on the sentence, the convening authority ordered a post-trial Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2012), hearing to inquire into Appellee's allegations as to whether the military judge properly: (1) declined to provide a mistake of fact instruction; (2) prohibited trial defense counsel from presenting evidence of Appellee's character for truthfulness; and (3) prohibited trial defense counsel from rehabilitating a defense witness's character for truthfulness.

At the Article 39(a), UCMJ, hearing, Appellee moved to disqualify the military judge on the basis of bias. After hearing oral argument on that motion, the military judge denied the motion. The military judge then summarily denied oral argument on the three issues the hearing was convened to address. Instead, the military judge stated he would make his ruling on these issues based on the record and briefs. Before the military judge could issue his ruling, Appellee petitioned the lower court for extraordinary relief in the nature of a writ of mandamus or a writ of prohibition, requesting that the lower court: (1) remove the military judge for bias; (2) grant a mistrial; or (3) appoint a special master to investigate allegations of unlawful command influence.

In *Brown v. United States*, 79 M.J. 833, 849 (N-M. Ct. Crim. App. 2020), a divided lower court, en banc, granted the writ petition in part and denied in part.[1] Because Appellee's sentence was less than the statutory minimum required to trigger automatic Article 66(b), UCMJ, 10 U.S.C. § 866(b) (2012), review, the lower court grappled with whether it had

---

[1] The court granted relief on the issue of bias on the part of the military judge and ordered his removal from the case.

statutory jurisdiction to entertain the writ petition. Although Appellee's sentence was not reviewable under Article 66, UCMJ, i.e., he was not sentenced to one year or more of confinement and did not receive a punitive discharge, the lower court found that TJAG could potentially refer the case for review, pursuant to Article 69(d), UCMJ. Therefore, the lower court found potential jurisdiction existed, even though there were still several conditions precedent to its ultimate review. The lower court eventually granted a writ of mandamus removing the military judge from the case after finding Appellee had demonstrated a clear and indisputable right to relief because the military judge disallowed oral argument during the post-trial hearing. In the lower court's view, this gave rise to an appearance of bias against Appellee. The lower court denied the remainder of the writ petition.

## Discussion

The certified issue addresses the jurisdiction of the lower court under the circumstances of this case. Jurisdiction is a question of law that we review de novo. *Howell v. United States*, 75 M.J. 386, 389 (C.A.A.F. 2016). The All Writs Act grants the power to "all courts established by Act of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act is not an independent grant of jurisdiction, nor does it expand a court's existing statutory jurisdiction. *Clinton v. Goldsmith*, 526 U.S. 529, 534–35 (1999). Rather, the All Writs Act requires two determinations: (1) whether the requested writ is "in aid of" the court's jurisdiction; and (2) whether the requested writ is "necessary or appropriate." *Denedo v. United States*, 66 M.J. 114, 119 (C.A.A.F. 2008) (internal quotation marks omitted). For purposes of answering the certified question, we need not determine whether the requested writ was necessary or appropriate. We therefore address only whether the requested writ is in aid of the lower court's jurisdiction.

To determine whether the requested writ is "in aid of" the lower court's jurisdiction, we must first determine the scope and authority for the lower court's statutory jurisdiction. *See United States v. Kelly*, 77 M.J. 404, 406 (C.A.A.F. 2018) ("As Article I courts, [the courts of criminal appeals] enjoy limited

3

jurisdiction, and are circumscribed by the Constitution to the powers specifically granted to them by statute."); *United States v. Arness*, 74 M.J. 441, 442 (C.A.A.F. 2015) ("The courts of criminal appeals are courts of limited jurisdiction, defined entirely by statute.").[2] The second determination concerns whether the requested writ implicates the lower court's subject-matter jurisdiction over the case or controversy. *See United States v. Denedo*, 556 U.S. 904, 911 (2008) ("As the text of the All Writs Act recognizes, a court's power to issue any form of relief—extraordinary or otherwise—is contingent on that court's subject-matter jurisdiction over the case or controversy."). To establish subject-matter jurisdiction, the harm alleged must have had "the potential to directly affect the findings and sentence." *Howell*, 75 M.J. at 390 (internal quotation marks omitted) (quoting *Center for Constitutional Rights v. United States*, 72 M.J. 126, 129 (C.A.A.F. 2013) (citing *Hasan v. Gross*, 71 M.J. 416 (C.A.A.F. 2012))).[3]

The Supreme Court has held that the power to issue writs "is not confined to the issuance of writs in aid of a jurisdiction already acquired by appeal." *FTC v. Dean Foods Co.*, 384 U.S. 597, 603 (1966) (internal quotation marks omitted) (quoting *Roche v. Evaporated Milk Assn.*, 319 U.S. 21 (1943)). The power also "extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected." *Id.* As we have explained, "the doctrine of potential jurisdiction allows appellate courts to issue opinions in matters that *may* reach the actual jurisdiction of the court." *Howell*, 75 M.J. at 390 n.4 (emphasis added) (citing *Dean Foods Co.*, 384 U.S. at 603).

Congress created a bifurcated statutory scheme for the appellate review of completed courts-martial, depending upon

---

[2] The suggestion, seemingly, by the dissent that the jurisdiction of Article I courts should be read more narrowly than other federal courts, is not a principle we discern from our reading of *Kelly*, 77 M.J. at 406.

[3] We easily conclude that the lower court has subject-matter jurisdiction to order the military judge's removal for the appearance of bias as it has the potential to directly affect the findings and sentence.

the sentence approved by the convening authority. A court of criminal appeals exercises jurisdiction over a broad range of cases under Article 66(b), UCMJ, including every case in which the approved sentence extends to a punitive separation or confinement for a year or more unless mandatory review is waived. Because Appellee's sentence is below the Article 66(b), UCMJ, threshold for mandatory review at the lower court, the Article 66(b), UCMJ, pathway to appellate review is unavailable to Appellee.[4]

Article 69, UCMJ, however, provides a second pathway to review before the Court of Criminal Appeals for an accused convicted and sentenced at a special court-martial. Cases not reviewed by the lower court pursuant to Article 66(b), UCMJ, such as the instant case tried at a special court-martial, can still be reviewed by TJAG "upon application of the accused" for, inter alia, "error prejudicial to the substantial rights of the accused." Article 69(b), UCMJ. TJAG can then choose whether to send the case to the lower court for review under Article 66, UCMJ. Article 69(d), UCMJ.[5]

Appellee may yet seek review by TJAG pursuant to Article 69(b), UCMJ. But, at the time of Appellee's writ petition to the lower court, any possible action by TJAG was foreclosed because the military judge had not returned his ruling during the post-trial hearing and the convening authority had yet to take action on the sentence. The Government contends that only after these " 'preliminary step[s]' " occur can potential jurisdiction apply. The Government relies upon *In re*

---

[4] Appellee contends that there is in fact a potential pathway to the lower court through Article 66(b), UCMJ, because of the possibility of a mistrial, which would result in a vacation of the findings and sentence. We find it unnecessary to consider this argument and express no opinion as to its correctness.

[5] The instant case was referred on January 12, 2018. For cases referred on or after January 1, 2019, pursuant to Article 66(b)(1)(D), 10 U.S.C. § 866(b)(1)(D), an accused is now entitled to have the courts of criminal appeals review his case with respect to matters of law if the accused applies for review from a decision of TJAG under Article 69(d)(1)(B) "and the application has been granted by the Court." Thus, it is no longer the case that only those cases that TJAG elects to refer to the court of criminal appeals under Article 69(d), UCMJ, may be heard by the lower court.

*Tennant*, 359 F.3d 523, 529 (D.C. Cir. 2004), where the United States Court of Appeals for the District of Columbia Circuit cautioned that it was inappropriate to invoke mandamus "solely on the basis that events *might* lead to a filing before an agency or lower court, which *might* lead to an appeal to this court." But *Tennant* is distinguishable. The court in *Tennant* concluded that it did not have potential jurisdiction because there was no case or other proceeding pending in a lower court or agency at the time of the application for an extraordinary writ. *Id.* The court in *Tennant* emphasized that, in contrast, "[o]nce there has been a proceeding of *some* kind instituted before an agency or court that might lead to an appeal, it makes sense to speak of the matter as being 'within [our] appellate jurisdiction'—however prospective or potential that jurisdiction might be." *Id.* (alteration in original) (citation omitted). Consistent with this position, we have often found that potential future actions on the part of other official actors are sufficient for potential jurisdiction in proceedings that have already begun.

In *Hasan*, 71 M.J. 416, we considered a petition for a writ of prohibition to prevent enforcement of the military judge's order to forcibly shave the appellant's beard prior to trial or, in the alternative, a writ of mandamus ordering removal of the military judge. At the time of the writ petition, it was unknown whether the appellant would be convicted, and whether the case would be eligible for mandatory review under Article 66(b), UCMJ.[6] Although our opinion did not discuss the lower court's statutory jurisdiction, because there were no findings or sentence, the lower court's only statutory basis was potential jurisdiction if the appellant was eventually convicted and sentenced.

---

[6] At the time of the appellant's offenses, the convening authority had "clear unfettered discretion … to modify the findings and sentence." *United States v. Nerad*, 69 M.J. 138, 145 (C.A.A.F. 2010); *see also* Article 60(c)(1), UCMJ, 10 U.S.C. § 860(c)(1) (2012) ("The authority under this section to modify the findings and sentence of a court-martial is a matter of command prerogative involving the discretion of the convening authority."). Therefore, the convening authority had the ability to modify the sentence or disapprove the findings and sentence entirely.

Subsequently, in *LRM v. Kastenberg*, 72 M.J. 364, 367–68 (C.A.A.F. 2013), we held the lower court erred in finding it lacked jurisdiction to consider an alleged sexual assault victim's petition for a writ of mandamus to compel the military judge to allow her special victims' counsel to be heard on matters involving her rights under Military Rules of Evidence 412 and 513. The lower court had jurisdiction notwithstanding the pretrial procedural posture of the case, since "[a] writ petition may be 'in aid of' a court's jurisdiction even on interlocutory matters where no finding or sentence has been entered in the court-martial." *Id*. at 368 (citation omitted). Like *Hasan*, it was unknown whether the accused would be convicted, and, if so, what findings and sentence would be approved by the convening authority. Because there were no findings or sentence, the lower court's statutory basis was potential jurisdiction if the accused was eventually convicted and sentenced.

Similarly, in *Howell*, 75 M.J. at 390, we held that the lower court had potential jurisdiction to grant a writ of prohibition after findings and sentence had been reached and the record of trial authenticated but before the convening authority had acted. Although the convening authority had not yet approved the sentence, which if approved would trigger automatic Article 66(b), UCMJ, review, we explained that "the doctrine of potential jurisdiction allows appellate courts to issue opinions in matters that may reach the actual jurisdiction of the court." *Howell,* 75 M.J. at 390 n.4. Because *Howell's* case could still reach the statutory jurisdiction of the lower court, there was potential jurisdiction even though the convening authority could potentially disapprove the findings and sentence entirely and thus thwart the lower court's statutory jurisdiction.

In each of these cases, potential jurisdiction existed even though intervening conditions could have ultimately prevented review by the lower court. Our jurisprudence has recognized that potential jurisdiction includes circumstances in which the lower court's statutory jurisdiction is attenuated and dependent upon the discretionary acts of others who exercise authority in the military justice system. It was impossible to know in advance how the members and the convening authority would act in *Hasan* or *LRM*, or how the

convening authority would act in *Howell*. Likewise, it is impossible for us to know how TJAG would act in this case under Article 69(d), UCMJ, but this does not defeat the lower court's potential jurisdiction. Potential jurisdiction exists as long as some pathway to the lower court's statutory jurisdiction remains. Here, pursuant to Article 69(d), UCMJ, TJAG will have the opportunity to decide whether to forward Appellee's case to the lower court for review under Article 66, UCMJ. Because such an action may still occur, the pathway for potential statutory jurisdiction remains open.

Our jurisprudence follows that of the Article III appellate courts, which also exercise potential jurisdiction even when a right to appeal depends on the occurrence or nonoccurrence of some condition. For example, in *Dean Foods Co.*, 384 U.S. at 603–04, the Supreme Court held that potential jurisdiction existed to issue an injunction preserving the status quo while a merger of two companies was being challenged before the Federal Trade Commission (FTC) even though it was possible that the FTC would approve the merger and thereby prevent the exercise of appellate jurisdiction. This principle also applies in federal criminal cases. *See* 16A Charles Alan A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3932 (3d ed. 2020) (explaining that even though an event such as "acquittal would defeat any occasion for appeal … this difficulty would not thwart a writ application by a defendant, unless perhaps the application involves a matter not subject to review by any means").

The instant case is distinguishable from *Arness*. In *Arness*, 74 M.J. at 442, the appellant's approved sentence also did not meet the jurisdictional threshold required for the lower court's mandatory review under Article 66(b), UCMJ. After completing his review, TJAG elected not to forward the case to the lower court for review under Article 69(d), which foreclosed the other statutory pathway to jurisdiction. 74 M.J. at 442. We held, "[a]s the Judge Advocate General did not refer [a]ppellant's case to the CCA—a statutory prerequisite for its review—the CCA was without jurisdiction to review it." *Id.* at 443. "Consideration of extraordinary relief is not 'in aid' of the [lower court's] jurisdiction, because the [lower court] had none in the first place." *Id.* In *Arness,* no statutory pathway existed for the lower court's statutory jurisdiction,

but in the instant case, because TJAG has not yet had the opportunity to decide whether to forward the case to the lower court pursuant to Article 69(d), UCMJ, such a potential pathway exists.

It is not disputed that we read the statutes governing jurisdiction in the military system "as an integrated whole, with the purpose of carrying out the intent of Congress." *United States v. Lopez de Victoria*, 66 M.J. 67, 69 (C.A.A.F. 2008). The dissent does not question the availability of extraordinary relief from an unfavorable ruling potentially infringing upon a substantial right on the day before sentencing. Apparently, the dissent's view is that the availability of such relief is lost the day after sentencing (assuming a nonqualifying sentence under Article 66(b), UCMJ). We, however, can find no indication in the statutory scheme that would compel such a result.

To reiterate, we hold that in a case like the one before us, potential jurisdiction under Article 66, UCMJ, and Article 69(d), UCMJ, attached at the inception of the court-martial. This potential jurisdiction continued as long as a pathway for review by the court of criminal appeals existed. Accordingly, the lower court had potential jurisdiction to entertain Appellee's writ petition.

## Decision

The certified question is answered in the negative. The record is returned to the Judge Advocate General of the Navy.

Judge OHLSON, with whom Chief Judge STUCKY joins, dissenting.

The majority holds that the lower court had potential jurisdiction to entertain Appellee's writ petition pursuant to the provisions of Article 69(d), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 869(d) (2012), and the All Writs Act, 28 U.S.C. § 1651 (2018). Because I disagree with this conclusion, I respectfully dissent.

As reflected below, both parties in this case have seemingly presented logical and compelling arguments in support of their positions. Reduced to its essence, the Government's reasoning is as follows:

In the military, the courts of criminal appeals (CCAs) are courts of limited jurisdiction and the scope of that jurisdiction is defined entirely by statute. *United States v. Arness*, 74 M.J. 441, 442 (C.A.A.F. 2015). Article 66(b), UCMJ, 10 U.S.C. § 866(b) (2012), grants jurisdiction to a CCA in every case where the approved sentence includes a punitive discharge and/or confinement for a year or more (unless the servicemember chooses to waive this otherwise mandatory review). However, once a sub-jurisdictional sentence is imposed in a case, the statutory jurisdiction of a CCA is extinguished. This extinguished jurisdiction can only be revived if the Judge Advocate General decides to refer the case to a CCA under Article 69, UCMJ, for the purpose of reviewing error prejudicial to the substantial rights of the accused. In the instant case, the Judge Advocate General had not yet decided whether to refer the matter to the CCA. Therefore, statutory jurisdiction remained extinguished in this case and the CCA had no authority to issue a writ at this point in the proceedings.

On the other hand, Appellee's reasoning—which essentially has been adopted by the majority of this Court—can be concisely expressed as follows:

As noted in *Arness*, the jurisdiction of a CCA is strictly defined by statute. 74 M.J. at 442. However, in addition to Article 66, UCMJ, and Article 69, UCMJ, the All Writs Act is a statute which empowers a CCA to "issue all writs necessary or appropriate in aid of [its] jurisdiction[]." 28 U.S.C. § 1651(a). The phrase "in aid of [its] jurisdiction[]" has been interpreted as statutorily extending CCA jurisdiction to those

cases where an appeal is not yet pending but where an appeal may later be perfected. *See FTC v. Dean Foods Co.*, 384 U.S. 597, 603–04 (1966). Stated differently, the "doctrine of potential jurisdiction" empowers a CCA to issue writs in those instances where a case still has some means of coming before the court. *Howell v. United States*, 75 M.J. 386, 390 n.4 (C.A.A.F. 2016). Here, Appellee's case still has some means of going before the CCA because the Judge Advocate General could, upon application of the accused, still exercise his statutory authority under Article 69, UCMJ, and refer the case to the CCA for review. Therefore, the CCA had statutory jurisdiction to issue a writ in this case because the issues raised involved the substantial rights of Appellee.

Ultimately, I conclude that the Government has the more compelling argument for three interlocking reasons.

First, the plain language of the statutes can be read as supporting the position that Congress created two entirely distinct means of providing a CCA with the authority to exercise jurisdiction in a case. One means applies in those cases where the sentence meets—or has the potential to meet—the sentencing threshold spelled out in Article 66, UCMJ. If the sentence is sub-jurisdictional, however, Congress created a totally separate means by which a CCA has jurisdiction—the provisions of Article 69, UCMJ. In the instant case, jurisdiction was extinguished under Article 66, UCMJ, when a sub-jurisdictional sentence was imposed,[1] and no new jurisdiction was created under Article 69, UCMJ, because the Judge Advocate General had not exercised his statutory authority to refer the case to the CCA for review under the provisions of that article. Allowing Appellee to bypass this Article 69,

---

[1] The CCA also determined that Article 66, UCMJ, was a pathway to potential jurisdiction because the issues to be addressed at the post-trial session might result in a mistrial, thereby paving the way for a new trial on the charges and ultimately an Article 66, UCMJ, appeal. *Brown v. United States*, 79 M.J. 833, 838 & n.6, 840 n.10 (N-M. Ct. Crim. App. 2020). I find this claim unpersuasive because any new trial on the charges would be restricted to the sub-jurisdictional sentence in this case. *See* Article 63, UCMJ, 10 U.S.C. § 863 (2012); Rule for Courts-Martial 810(d)(1).

UCMJ, review by the Judge Advocate General thwarts the statutory scheme created by Congress.

Second, the implication of the majority opinion is that the CCAs have expansive jurisdiction over courts-martial. That is, although Congress limited CCA review to cases with sentences of a certain severity, the majority, using the All Writs Act, now allows the CCAs to review cases with *any* sentence, so long as these courts assert jurisdiction prior to the Judge Advocate General's action on the case.[2] This is a quintessential example of using the All Writs Act to expand jurisdiction, which this Court cannot do. *See Clinton v. Goldsmith*, 526 U.S. 529, 534–35 (1999).

Third, we should interpret the provisions of Article 66, UCMJ, and Article 69, UCMJ, in concert with three fundamental legal principles: (a) the jurisdiction of Article I courts should be read narrowly, *United States v. Kelly*, 77 M.J. 404, 406 (C.A.A.F. 2018); (b) "we 'read the statutes governing … jurisdiction as an integrated whole, with the purpose of *carrying out the intent of Congress* in enacting them' " when determining the scope of jurisdiction, *Randolph v. HV*, 76 M.J. 27, 29 (C.A.A.F. 2017) (emphasis added) (quoting *United States v. Lopez de Victoria*, 66 M.J. 67, 69 (C.A.A.F. 2008)); and (c) "[t]he burden to establish jurisdiction rests with the party invoking the court's jurisdiction," which in this case is Appellee, *United States v. LaBella*, 75 M.J. 52, 54 (C.A.A.F. 2015). Thus, when presented with the parties' competing arguments, I conclude that we should err on the side of interpreting the contours of a CCA's jurisdiction narrowly, and we should determine that Appellee has not met his burden of establishing that his view of this statutory issue should prevail.

I would therefore answer the certified issue in the affirmative and hold that the lower court erred in finding that it had jurisdiction in this case. Accordingly, I respectfully dissent.

---

[2] It is unclear if the reasoning of the majority opinion would allow for "potential jurisdiction" over summary courts-martial, but these courts-martial appear to fall under the authority of the Judge Advocate General to refer "any court-martial" to the CCA. Article 69(d)(1), UCMJ.