# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

—————————————

**Misc. Dkt. Nos. 2022-09, 2022-10, 2022-15**

—————————————

**In re United States**
*Petitioner*

**In re MW**
*Petitioner*

**Marshall R. Robinson**
Staff Sergeant (E-5), U.S. Air Force
*Real Party in Interest*

—————————————

Petitions for Extraordinary Relief in the Nature of a Writ of
Mandamus

Decided 3 February 2023

—————————————

*Military Judge:* Dayle P. Percle.

*GCM convened in the matter of United States v. Staff Sergeant Marshall R. Robinson at*: Air Force District of Washington, Joint Base Andrews, Maryland.

*For Petitioner United States:* Colonel Naomi P. Dennis, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Captain Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

*For Petitioner MW:* Captain Nicholas J. Hall, USAF; Devon A. R. Wells, Esquire.

*For Real Party of Interest*: Major Matthew L. Blyth, USAF; Captain Thomas R. Govan Jr., USAF.

Before POSCH, RICHARDSON, and CADOTTE, *Appellate Military Judges.*

Senior Judge POSCH delivered the opinion of the court, in which Judge RICHARDSON and Judge CADOTTE joined.

————————————

**This is an unpublished opinion and, as such, does not serve as
precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

POSCH, Senior Judge:

This opinion resolves three petitions for extraordinary relief in the pending general court-martial of *United States v. Staff Sergeant Marshall R. Robinson*. Each petition relates to conversations between the Government's prosecution team and attorneys representing an alleged victim regarding prospective panel member challenges. The Real Party in Interest (hereinafter the Accused), through counsel, objected to the conversations in a motion after voir dire examination of panel members.

After a hearing on the matter, on 28 September 2022, the military judge issued a summarized ruling during the proceedings. The ruling prohibited the Government from exercising challenges for cause and peremptory challenges. The Government requested reconsideration of the ruling, and on 16 October 2022, the military judge issued a written ruling that denied reconsideration and explained her earlier ruling. The Government moved to continue the court-martial, and the military judge granted said motion. The proceedings were continued until 13 February 2023.

Having considered the petitions, responsive briefs, matters attached to those briefs and to the proceedings before this court, and the partial record of the proceedings below, we grant in part one of the petitions, *In re United States*, Misc. Dkt. No. 2022-10, as specified below.

## I. PROCEDURAL HISTORY OF THE PETITIONS

On 6 October 2022, the court received a petition from the Government for extraordinary relief in the nature of a Writ of Mandamus. On 12 October 2022, the court docketed this petition, styled *In re United States*, Misc. Dkt. No. 2022-09. In that petition, the Government seeks this court to order production of the audio recordings of all open sessions of the court-martial. On 18 October 2022, the Government submitted another petition for extraordinary relief in the nature of a second Writ of Mandamus. On 19 October 2022, the court docketed this second petition, styled *In re United States*, Misc. Dkt. No. 2022-10. In that second petition, the Government requests this court to reverse the military judge's order prohibiting trial counsel from exercising challenges for cause and peremptory challenges.

Petitioner MW is an alleged victim of the charged offenses in the proceedings below. On 3 November 2022, Petitioner MW requested this court issue a writ of mandamus to reverse the military judge's ruling and allow Petitioner MW to confer with the Prosecution's trial team during the proceedings, including voir dire examination of panel members and "in response to the Accused's motion to dismiss."[1] Petitioner MW makes this request pursuant to Article 6b,[2] Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 806b, and Rule 19 of the Joint Rules of Appellate Procedure for Courts of Criminal Appeals. On 4 November 2022, the court docketed the petition, styled *In re MW*, Misc. Dkt. No. 2022-15.

During the court's initial consideration of these petitions, we ordered the Government to cause a partial record of trial to be prepared. On 1 November 2022, the court ordered that record to be provided to the court, counsel for the Government, the presiding military judge below, and counsel for the Accused not later than 1 December 2022. On 4 November 2022, after receipt and docketing of Petitioner MW's petition, the court ordered a copy of the record assembled in accordance with the court's 1 November 2022 order to be provided to Petitioner MW. The court received the record on 1 December 2022, and pursuant to direction in both orders, Petitioner MW, the Government, and the Accused were permitted to submit supplemental briefs.

In compliance with this court's briefing schedule, on 20 December 2022 the Government submitted a supplemental brief. On 21 December 2022, the Accused submitted a response brief. On 28 December 2022, Petitioner MW submitted a reply to those briefs, and on 3 January 2023, the Government submitted a timely reply to the Accused's response brief.

## II. BACKGROUND

The pleadings and record establish the following sequence of events in the ongoing proceedings, convened by the Commander, Headquarters, Air Force District of Washington, Joint Base Andrews, Maryland.

---

[1] The court understands Petitioner MW's reference to the Accused's motion to "dismiss" to mean his motion for mistrial and, in the alternative, to disqualify or otherwise remove trial counsel, MW's victim's counsel, and MW's area defense counsel from participation in the case.

[2] Article 6b, UCMJ, refers to the rights of victims of offenses under the UCMJ, including at pretrial, trial, and post-trial phases of court-martial proceedings.

On 24 March 2022, the convening authority referred for trial one charge with one specification of abusive sexual contact and three specifications of sexual assault, in violation of Article 120, UCMJ, 10 U.S.C. § 920; and one charge and one specification of assault consummated by a battery, in violation of Article 128, UCMJ, 10 U.S.C. § 928. The Accused was arraigned on 26 September 2022 in the courtroom of the 316th Wing at Joint Base Andrews, Maryland. The Accused elected to be tried by a court-martial panel comprised of officer and enlisted members. Group voir dire of panel members was conducted on 26 September 2022, and individual voir dire was conducted on 27 September 2022. The victim's counsel[3] who represented Petitioner MW at trial (victim's counsel) was present in the gallery of the courtroom and took notes during group and individual voir dire. Petitioner MW's area defense counsel (MW's area defense counsel) was also present.

## A. The Member Selection Conversation

After the conclusion of individual voir dire, the military judge recessed the court-martial to allow counsel for both parties to review their notes and prepare member challenges. During the recess, the circuit trial counsel and assistant trial counsel (hereinafter referred to collectively as trial counsel) entered the gallery to review their notes and discuss possible challenges with their appointed confidential expert consultant. Victim's counsel and MW's area defense counsel joined the conversation (hereinafter referred to as the member selection conversation). During the member selection conversation, the four attorneys—all captains—discussed possible challenges. Victim's counsel read aloud his notes to trial counsel and voiced his opinion as to potential government challenges. MW's area defense counsel participated in the conversation. A member of the Accused's family was present during the proceedings and remained in the courtroom during the conversation. One of the Accused's two civilian defense counsel observed this conversation in passing and later spoke to the circuit trial counsel, who provided a synopsis of what was discussed.

After the recess, the Defense brought the member selection conversation to the attention of the military judge. The Defense argued the communications between trial counsel and victim's counsel were improper. The civilian defense counsel noted concern about sitting a fair and impartial panel selected with the aid of the victim's counsel. The Defense made an oral motion seeking three alternative remedies: first, to excuse the panel members and detail new members; second, to remove victim's counsel, MW's area defense counsel, and all members of the Prosecution team—including the Government's expert and the

---

[3] The use of "victim," "victim's counsel," and like terms in this opinion reflects no determination or implication as to the merits of the charged offenses.

case paralegal—from further participation in the case; and third, to declare a mistrial. At no point during the discussion of the motion did counsel for either party assert or question whether victim's counsel's participation in the member selection conversation was a right protected by Article 6b, UCMJ. After the motion, the military judge recessed for lunchtime and to consider how to proceed on the defense motion when court reconvened.

**B. The Article 6b, UCMJ, Discussion**

During the lunch recess, members of the prosecution team, victim's counsel, and MW's area defense counsel again gathered in the courtroom gallery. They discussed a possible response to the defense motion (hereinafter referred to as the Article 6b, UCMJ, discussion). During the Article 6b, UCMJ, discussion, victim's counsel opined that Article 6b(a)(5), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 806b(a)(5), permitted the member selection conversation. Victim's counsel told trial counsel that Article 6b, UCMJ, included the right of a detailed counsel representing a victim to "confer" with trial counsel about the court-martial proceedings.

When court reconvened, the second of Accused's two civilian defense counsel informed the military judge of the conversation she overheard in part during the lunch recess. She related hearing victim's counsel remark to trial counsel, "I think that is how you should respond to this issue." The Defense questioned the appropriateness of this second discussion, arguing, "[I]t again raises concern for the defense team about how these proceedings are being handled and the impartiality of counsel." In response, the military judge stated that she would hold a hearing on the defense motion. The military judge ordered trial counsel, victim's counsel, and MW's area defense counsel to sequester and not speak with anyone about the case until factfinding was complete.

**C. Article 39(a), UCMJ, Evidentiary Hearing**

The military judge then ordered the circuit trial counsel, assistant trial counsel, victim's counsel, and MW's area defense counsel to depart the courtroom. The military judge ordered the four attorneys not to speak about the issues with anyone, including their respective leadership chains. The military judge announced she would separately question each attorney on the record and then allow the Defense to ask questions. In an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session without members, the military judge took evidence. During that session, no representative for the Government was present in the courtroom or permitted to ask questions of the four attorneys. The military judge individually questioned each attorney under oath about the member selection conversation during the first recess, and about the Article 6b, UCMJ,

discussion during the lunch recess. The Defense participated in the questioning.

Evidence at that hearing showed that during the member selection conversation, victim's counsel and MW's area defense counsel provided input to trial counsel about member challenges. Circuit trial counsel testified "both victim's counsel and victim's [area] defense counsel gave indications of which members they believed would be beneficial and which would not be beneficial to their client to have on the panel." In the circuit trial counsel's telling, they "discussed which members the victim's counsel believed would be in [Petitioner MW]'s best interest to have on the panel." Later during the same conversation, MW's area defense counsel provided similar input. Victim's counsel testified he "did discuss how certain members might benefit [his] client's position." Circuit trial counsel testified she considered the input of both attorneys, explaining she "considered [the input] in [her] final determination of what [she] believed the appropriate challenges would be for the [G]overnment to make."

Evidence showed that during the Article 6b, UCMJ, discussion over the lunch recess, victim's counsel informed trial counsel of Petitioner MW's right to confer with counsel for the Government. The assistant trial counsel was the first witness called to testify at the Article 39(a), UCMJ, session, which included this exchange with the military judge:

> Q [Military Judge]. Can you tell me about that – the second conversation?
>
> A [Assistant Trial Counsel]. Yes. The second conversation was just the victim's counsel bringing to our attention the Article 6b rights. Specifically the victim's right to confer with counsel during court-martial.
>
> Q. Was anything else discussed in that second conversation?
>
> A. Not that I recall, ma'am.

Victim's counsel testified he informed trial counsel "there is a right to confer with the [G]overnment" that belonged to Petitioner MW. Victim's counsel further testified his purpose in engaging with trial counsel in the Article 6b, UCMJ, discussion was to ensure that trial counsel knew victim's counsel's position in the event that victim's counsel was not recognized by the military judge to speak on his client's behalf. In that regard, victim's counsel engaged with trial counsel because he "did not anticipate being allowed to be heard by the court." In victim's counsel's telling, if he "was not going to be recognized by the court at that point [he] thought [the Article 6b, UCMJ, right to confer with trial counsel] was a point that should be given to the court . . . [b]y trial counsel."

6

Following questioning of the attorneys, the military judge directed that conflict-free counsel be made available to act as a conduit for discovery of notes taken by trial counsel and victim's counsel. Those notes pertained to the member selection conversation and identified the Government's prospective challenges and possible bases for each challenge. The deputy staff judge advocate for the 316th Wing Office of the Staff Judge Advocate gathered the notes in accordance with the military judge's instruction and, after the military judge conducted an *in camera* review of the notes, they were provided to the Defense.

Before argument on the motion, the military judge rescinded her non-dissemination[4] and sequestration orders and allowed trial counsel to resume representation of the Government in the proceedings. When trial counsel was again present in the courtroom, the military judge accepted a stipulation between counsel for both parties. The military judge agreed to consider that after the member selection conversation, the circuit trial counsel changed her mind about opposing one of Defense's challenges. She approached the Defense and, as the military judge summarized the stipulation, "indicated she would agree to one additional member being added to the list of agreed upon excusals."

### D. Argument by Counsel and Unlawful Influence

During argument on the motion, and for the first time, the Defense intimated that the member selection conversation might constitute unlawful influence. In that regard, civilian defense counsel who argued the motion apprised the military judge of a case[5] in which collaboration between a victim's counsel and trial counsel was examined "under the unlawful command influence [UCI] rubric." After the military judge sought clarification whether the Defense wanted the court to review the conduct of counsel "under the UCI lens," civilian defense counsel replied, "I think if the court feels that UCI is applicable[,] we welcome the court's analysis under that rubric." When arguing the motion, circuit trial counsel asserted that "[t]he decisions on whether to make challenges and who to challenge are the decisions of trial counsel."

### E. Military Judge's Ruling

On 28 September 2022, in a summarized oral ruling during the proceedings, the military judge announced findings of fact, and then granted, in part, the defense motion. The military judge assumed without deciding that the member selection conversation created an appearance of unfairness, but the "court acted immediately to cure that appearance." The military judge found

---

[4] The parties refer to this as a gag order.

[5] *United States v. Horne*, 82 M.J. 283 (C.A.A.F. 2022).

no ethical violation warranting disqualification of trial counsel, victim's counsel, or MW's area defense counsel. Additionally, the military judge denied the requested remedies of excusing the panel or declaring a mistrial.

On the issue of remedy, the military judge found "[w]hatever damage was done . . . was minor and was and is curable." In her summarized findings of fact, the military judge considered the fact that the hearing on the matter equipped the Defense with knowledge of the conversation that occurred "in the public space regarding member selection as well as the notes referred to during this conversation." Without making a finding that the Accused was actually prejudiced, the military judge found any potential prejudice had been cured:

> Although this court believes the prejudice alleged by [D]efense with respect to this conversation has been cured both by providing the [D]efense with the exact same information that was provided to the [G]overnment during those conversations[,] this court also notes that the members are not tainted by any actions discussed herein.

In that regard, the military judge found:

> [T]he conversation about member selection did not permeate the actual questioning stage of members and that all — that the alleged incident was isolated to one conversation regarding member selection strategy after all members have been questioned and dismissed by this court and one conversation regarding the response to any challenge about this discussion.

As further remediation "to ensure any prejudice from this instance [was] isolated," the military judge ordered that trial counsel was "prohibited from exercising any challenges on any member in this case[,] peremptory or otherwise." The military judge announced her written ruling would be issued in due course.

On 4 October 2022, trial counsel moved for appropriate relief in a written motion, asking the military judge to order production of the audio recordings of all open sessions of the court-martial. Citing Rule 3.9 of the Uniform Rules of Practice Before Air Force Courts-Martial,[6] trial counsel argued the recordings were "particularly necessary." For support, trial counsel relied on the fact

---

[6] The rule, effective 1 March 2022, provides that before a military judge signs the Statement of Trial Results, "neither audio recordings nor transcribed records of any proceeding will be released to any party to the trial, or to any other entity, without the prior approval of the military judge. Before approving such a release, the military judge may issue an appropriate protective order."

that no representative of the Government was present during significant portions of the proceedings held on 27 September 2022 when the military judge conducted factfinding on the defense motion. Trial counsel argued the military judge should grant the Government's motion for appropriate relief "to allow the Government to file a Petition for an Extraordinary Writ" with this court.

On 6 October 2022, the Government sought a writ of mandamus from this court. The Government requested we order the military judge to release the audio recording of the proceedings, which the military judge had denied citing concern that the recording equipment captured privileged communications at the Defense's table. The Government argued the recording was necessary to establish a factual basis to grant the petition because trial counsel were barred from the courtroom during factfinding on the Accused's motion.

While the Government's first petition (Misc. Dkt. No. 2022-09) was docketed and pending before this court, on 13 October 2022 trial counsel filed a motion for reconsideration of the military judge's summarized ruling.

On 16 October 2022, the military judge issued a written ruling, which also addressed the Government's opposition to the Defense's motion and the Government's 13 October 2022 request for reconsideration of the oral ruling during the proceedings. In the military judge's essential findings of fact in the written ruling, she did not make a finding that the Accused was prejudiced. To the contrary, in reference to the member selection conversation, she found that "[a]fter this conversation," the circuit trial counsel "approached [the Defense] and 'agreed' to a joint challenge of an additional member she had previously not agreed to."

In conclusions of law, the military judge found that the member selection conversation and Article 6b, UCMJ, discussion[7] "were impermissible." As to the member selection conversation, the military judge described it as "[a]n alleged victim influencing the composition of the court-martial through her [victim's counsel and area defense counsel]." The military judge found that the conversation "raise[d] serious concerns regarding the apparent fairness of the proceeding and, to the extent it might be termed conference under [Article 6b(a)(5), UCMJ], [wa]s unreasonable." As to the Article 6b, UCMJ, discussion, the military judge found it "unreasonable for [victim's counsel], after an objection to his conduct, to step into the role of [trial counsel] and advise [trial counsel] on how to respond to, or handle the objection." The military judge explained that victim's counsel was "not a third [trial counsel] present in the [c]ourtroom,

_____

[7] The military judge characterized the Article 6b, UCMJ, discussion as a "strategy discussion."

and even the appearance of being one cast[ ] serious doubts on the fairness of the proceedings." The military judge concluded that both "conversations appeared to influence the court (*i.e.*, the members now detailed to the court-martial) by unauthorized means. Put simply, these conversations were apparent adjudicative UCI."

The military judge maintained her prohibition of trial counsel exercising panel member challenges authorized by Article 41, UCMJ, 10 U.S.C. § 841, and Rule for Courts-Martial (R.C.M.) 912. However, the military judge indicated that replacement of the Prosecution team would reopen the ability of the Government to challenge members:

> Rather than cede challenges to members in *voir dire*, the entirety of the Government trial team may be replaced and walled from any knowledge of the member selection conversation. If the Government elects to pursue that course, the Court would permit the replacement Government trial team to raise member challenges for cause, should any exist, as well as a peremptory challenge.

On 17 October 2022, the Accused filed an untimely reply to the Government's 13 October 2022 motion for reconsideration. In this filing, the Accused conceded trial counsel should maintain challenges for cause. However, the military judge declined to accept the filing, noting that she had not authorized such a reply brief.

On 19 October 2022, the military judge ruled that trial counsel was authorized to arrange for transcription of the relevant open sessions from a hearing in this case that preceded her 16 October 2022 ruling. The military judge provided that such transcript, if generated, should be provided to the military judge and the Government and Defense upon completion.

On 1 November 2022, this court ordered the Government to cause a partial record to be prepared. We found portions of the record were relevant to resolve the petitions under review because the Government challenged the military judge's 16 October 2022 ruling and other rulings and decisions. We ordered a partial record to be prepared as follows:

> The court reporter shall assemble a record that complies with R.C.M. 1112(b)(2)–(5). A duplicate of the charge sheet will be included in lieu of the original. R.C.M. 1112(b)(2). Any exhibits including appellate exhibits that pertain to the matters at issue in the petitions shall be included in the record. Additionally, panel member data sheets, an exhibit list, and witness list will be included. The exhibit and witness list will reference the page in

the transcript where the evidence and witness testimony was first identified, offered, or admitted.

The court reporter shall prepare a certified verbatim transcript of the proceedings, R.C.M. 1114(a)(2).

The court reporter shall then certify that the record includes all items required by R.C.M. 1112(b)(2)–(5) and the transcript.

On 1 December 2022, the court received a certified record assembled in accordance with its order.

## III. APPLICABLE LAW

### A. Writ of Mandamus

The All Writs Act, 28 U.S.C. § 1651(a), grants a Court of Criminal Appeals "authority to issue extraordinary writs necessary or appropriate in aid of its jurisdiction." *Chapman v. United States*, 75 M.J. 598, 600 (A.F. Ct. Crim. App. 2016) (citing *Loving v. United States*, 62 M.J. 235, 246 (C.A.A.F. 2005)). The purpose of a writ of mandamus is to confine lower courts to the "proper exercise of their power and authority" and "to compel officers and commanders to exercise their authority when it is their duty to do so." *Sutton v. United States*, 78 M.J. 537, 541 (A.F. Ct. Crim. App. 2018) (alterations, internal quotation marks, and citations omitted).

In order to prevail on a petition for a writ of mandamus, a petitioner "must show that: (1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (citing *Cheney v. United States Dist. Court*, 542 U.S. 367, 380–81 (2004)). A writ of mandamus "is a 'drastic instrument which should be invoked only in truly extraordinary situations.'" *Howell v. United States*, 75 M.J. 386, 390 (C.A.A.F. 2016) (quoting *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983) (per curiam)).

### B. Article 6b, UCMJ

Article 6b(e)(1), UCMJ, 10 U.S.C. § 806b(e)(1), states:

If the victim of an offense under this chapter believes that . . . a court-martial ruling violates the rights of the victim afforded by a section (article) or rule specified in paragraph (4) [of this Article], the victim may petition the Court of Criminal Appeals for a writ of mandamus to require . . . the court-martial to comply with the section (article) or rule.

Article 6b(e)(4)(A), UCMJ, provides that this right to petition the Court of Criminal Appeals for a writ of mandamus applies with respect to protections afforded by Article 6b, UCMJ.

Article 6b(a)(5), UCMJ, provides that the victim of an offense under the UCMJ has, among other rights, "[t]he reasonable right to confer with the counsel representing the Government at any proceedings described in paragraph (2)." Among proceedings described in paragraph (2) is "[a] court-martial relating to the offense." Article 6b(a)(2)(C), UCMJ, 10 U.S.C. § 806b(a)(2)(C).

## C. Unlawful Influence

Unlawful influence is prohibited as follows:

> No person subject to this chapter . . . may attempt to coerce or, by any unauthorized means, attempt to influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority or preliminary hearing officer with respect to such acts taken pursuant to this chapter . . . as prescribed by the President.

Article 37(a)(2), UCMJ, 10 U.S.C. § 837(a)(2).

With respect to unlawful influence committed on or after 20 December 2019, "[n]o finding or sentence of a court-martial may be held incorrect on the ground of a violation of [Article 37, UCMJ,] unless the violation materially prejudices the substantial rights of the accused." Article 37(c), UCMJ, 10 U.S.C. § 837(c). *See* National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, § 532, 133 Stat. 1198, 1360 (2019) (amending Article 37, UCMJ, as contained in the *Manual for Courts-Martial, United States* (2019 ed.)).

This court has yet to address how the amended Article 37, UCMJ, may change the standard for determining whether apparent unlawful influence occurred and if relief is warranted on that basis. The United States Court of Appeals for the Armed Forces (CAAF) also has not addressed application of the amendment to a case. *See generally United States v. Horne*, 82 M.J. 283, 284 n.1 (C.A.A.F. 2022); *United States v. Proctor*, 81 M.J. 250, 255 n.3 (C.A.A.F. 2021). As applied to an accused-appellant on direct review, the CAAF has

stated the applicable law of apparent unlawful command influence prior to the amended version of Article 37, UCMJ, as follows:[8]

> To make a prima facie case of apparent unlawful command influence, an accused bears the initial burden of presenting some evidence that unlawful command influence occurred. This burden on the defense is low, but the evidence presented must consist of more than mere allegation or speculation.
>
> Once the accused meets the "some evidence" threshold, the burden shifts to the government to prove beyond a reasonable doubt that either: (a) the predicate facts proffered by the appellant do not exist, or (b) the facts as presented do not constitute unlawful command influence. If the government cannot succeed at this step, it must prove beyond a reasonable doubt that the unlawful command influence did not place an intolerable strain upon the public's perception of the military justice system and that an objective, disinterested observer, fully informed of all the facts and circumstances, would not harbor a significant doubt about the fairness of the proceeding.

*Horne*, 82 M.J. at 286–87 (quoting *United States v. Bergdahl*, 80 M.J. 230, 234 (C.A.A.F. 2020)) (additional internal quotation marks and citations omitted).

## IV. ANALYSIS

The Government requests we issue a writ of mandamus to reverse the military judge's decision not to release the audio recording of the court-martial. The Government also requests we issue a writ of mandamus to reverse the military judge's order prohibiting trial counsel from exercising challenges for cause and peremptory challenges following voir dire. The Government seeks our intervention "to ensure the integrity of the ongoing proceeding[s] and to deter military judges in the future from inflicting a prohibition on challenges which injures the fairness of courts-martial."

Petitioner MW requests this court to order the military judge to reverse her ruling and allow Petitioner MW's counsel to confer with trial counsel during the court-martial proceedings, including during voir dire and in response to the Accused's motion to remove trial counsel, victim's counsel, and MW's area

---

[8] A claim of unlawful influence from a non-command source is evaluated by the same standard used to evaluate "abuses perpetrated by those in command or those acting with the mantle of command authority." *United States v. Barry*, 78 M.J. 70, 76–77 (C.A.A.F. 2018).

defense counsel. Citing *United States v. Labella*, 15 M.J. 228 (C.M.A. 1983) (per curiam), Petitioner MW contends relief is appropriate because the military judge's ruling that limited her statutory right to confer with trial counsel is "an erroneous practice which is likely to recur." *See id.* at 229 (internal quotation marks and citation omitted).

## A. Standard of Review

Petitioner MW contends this court should apply an abuse of discretion standard of review to enforce protections afforded by Article 6b, UCMJ. The Government and the Accused disagree, contending that the correct standard is the three-part test for relief the CAAF applied in *Hasan*, including Petitioner MW's burden to demonstrate her entitlement to relief is "clear and indisputable." 71 M.J. at 418 (citation omitted).

The court considered this issue in the matter of *In re KK*, ___ M.J. ___, Misc. Dkt. No. 2022-13, 2023 CCA LEXIS 31 (A.F. Ct. Crim. App. 24 Jan. 2023). In resolving the writ petition in that case, we concluded that "the traditional mandamus standard" applies. *Id.* at *10 (citing *Hasan*, 71 M.J. at 418). It follows that the Government and Petitioner MW in their respective petitions bear the burden to demonstrate: "(1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan*, 71 M.J. at 418 (citation omitted).

We turn then to evaluate the Government's petition to order production of the audio recording, and the military judge's rulings regarding the member selection conversation and the Article 6b, UCMJ, discussion.

## B. Audio Recording Issue

The Government seeks a writ of mandamus to order the military judge to reverse her ruling on its motion for appropriate relief to release the audio recording of the proceedings below. On 1 December 2022, in compliance with this court's order, a partial record of trial was provided to the parties and to counsel representing Petitioner MW in this petition. That record included a certified verbatim transcript of the proceedings. The Accused argues that no reason remains to grant the extraordinary remedy of a writ of mandamus. We agree. The partial record of trial is an adequate substitute for the requested audio recording and issuance of a writ is neither appropriate nor necessary. Accordingly, the Government's petition in the matter of *In re United States*, Misc. Dkt. No. 2022-09, is denied.

**C. Member Selection Conversation**

We evaluate the member selection conversation in the context of an accused's right to be tried by a panel of fair and impartial members, which is a central tenet of the military justice system. *United States v. Leonard*, 63 M.J. 398, 399 (C.A.A.F. 2006). This "cornerstone" right "is so important that the process of selecting a court-martial panel enjoys protections under the Constitution, statute, regulations, and case law." *Id.* (citations omitted).

While the unlawful influence concern was not the reason the military judge initiated the Article 39(a), UCMJ, hearing, the military judge did not err by exercising vigilance to ensure the Accused's right to a fair trial. The military judge perceived that because the member selection conversation "was viewed by the members of the public," to include "the [A]ccused and [his] family, this contributed to the overall detriment of the public confidence in the military justice system."

We not only understand why the military judge acted immediately to investigate the appearance of unfairness and identify any possible prejudice to the Accused, but find it was sensible that the military judge did so. The Defense raised the issue when it suggested the military judge examine the circumstances "under the unlawful command influence [UCI] rubric." The CAAF recently discussed with approval pre-findings litigation on UCI: "[T]he full litigation of [improper influence] allegations before trial reflected well on the military justice system. The litigation showed that the military judge realized the importance of resolving the matter before trial." *Horne*, 82 M.J. at 289; *see also* R.C.M. 801(a)(3) (stating the military judge has a responsibility to, "[s]ubject to the UCMJ and this Manual, exercise reasonable control over the proceedings to promote the purposes of these rules and this Manual"); *United States v. Douglas*, 68 M.J. 349, 354 (C.A.A.F. 2010) (recognizing a military judge may intervene to take "proactive, curative steps" when necessary "to ensure a fair trial").

However, at the same time the military judge evaluated application of Article 6b, UCMJ, to the issue at hand, the military judge presided over a hearing without a government representative and then ruled trial counsel was prohibited from exercising challenges against panel members. This was error. *See* Article 39(b), UCMJ (stating that a hearing outside the presence of the members "shall be conducted in the presence of the accused, the defense counsel, and the trial counsel and shall be made a part of the record"); R.C.M. 805(c) (stating "[a]s long as at least one qualified counsel for each party is present, other counsel for each party may be absent from a court-martial session"). In Article 6b, UCMJ, Congress bestowed upon victims "[t]he reasonable right to confer with counsel representing the Government." Article 6b(a)(5), UCMJ.

15

This right to confer and its exercise are not absolute and must be weighed against a reasonableness requirement expressly provided for in the law. In this case, we cannot determine the propriety of the military judge's rulings relating to victim's counsel conferring with trial counsel that were based on facts developed in the *ex parte* hearing.

The Government petitions the court to order the military judge to reverse her decision prohibiting trial counsel from exercising member challenges. However, such remedy presumes the Accused and the Government had an opportunity to meet their respective burdens regarding a claim of unlawful influence. An appropriate remedy, therefore, is a hearing where the Government is represented by counsel. At that hearing, the Government may or may not establish it is entitled to the relief it seeks from this court. Applying the established framework for resolving a claim of unlawful influence, the Government may challenge the finding of a prima facie case of some evidence that unlawful influence occurred and that it had "a logical connection to the court-martial in terms of potential to cause unfairness in the proceedings." *See United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002).

Consistent with *Stoneman* and other long-standing precedent, if the burden shifts then the Government, if it chooses, may seek to "overcome its burden by either proving that [unlawful] influence does not exist or, assuming that it does, that [the A]ccused was not prejudiced." *See United States v. Gerlich*, 45 M.J. 309, 310 (C.A.A.F. 1996). Only if the Government "fails to meet its burden to rebut the allegation," then the Accused has established that the purpose of the member selection conversation "was the unlawful one of seeking to affect the findings or sentence." *See United States v. Riesbeck*, 77 M.J. 154, 166 (C.A.A.F. 2018) (evaluating claim of panel member-stacking).[9]

At such a hearing, the Government shall have the opportunity to demonstrate that the member selection conversation did not unlawfully influence trial counsel. Alternatively, the Government may attempt to demonstrate that the member selection conversation would not adversely influence the findings or sentence, which is to say, show proof that the Accused would not experience

---

[9] If any doubt remained whether disproving material prejudice to a substantial right of the Accused is shouldered by the Government, that question was answered in *United States v. Riesbeck*: "In the improper member selection context," the CAAF stated that "[i]n order to prevail *on the issue of prejudice*, the *Government must convince* this Court, *beyond a reasonable doubt*, that Appellant received a fair trial, free from the effects of unlawful command influence." 77 M.J. 154, 166 (C.A.A.F. 2018) (emphasis added) (citations omitted).

material prejudice to his substantial rights. Put another way, the Government's burden under applicable law is to prove that the Accused was not harmed from the conduct of trial counsel, victim's counsel, and MW's area defense counsel. *See Horne*, 82 M.J. at 286–87 (applying beyond a reasonable doubt standard).

Because we vacate the ruling and allow a hearing, the Government may present evidence and argument as to why a particular measure is unnecessary to mitigate any prejudice to the Accused. This includes the opportunity for counsel for both parties to argue whether the Government should not be permitted to articulate challenges for cause in contravention to R.C.M. 912.[10] That rule provides that "[t]rial counsel shall state any ground for challenge for cause against any member of which trial counsel is aware." R.C.M. 912(c); *see also* R.C.M. 912(f)(2)(A) (stating "each party shall state any challenges for cause"); R.C.M. 912(f)(3) (stating "[e]ach party shall be permitted to make challenges"). The Government aptly contends that trial counsel does not rule on a challenge for cause, which is the complete purview of the military judge who "shall rule finally on each challenge." R.C.M. 912(f)(3).[11]

We find the Government has a clear and indisputable right to a hearing before the military judge rules on the defense motion or *sua sponte*. We further hold there is no other adequate means for the Government to obtain relief and that issuance of the writ is appropriate. Accordingly, the Government's petition in the matter of *In re United States*, Misc. Dkt. No. 2022-10, is granted in that we vacate the military judge's ruling, and therefore Petitioner MW's petition requesting we vacate the military judge's ruling regarding the member selection conversation in the matter of *In re MW*, Misc. Dkt. No. 2022-15 is denied as moot.

## D. Article 6b, UCMJ, Discussion and Right to Confer

Petitioner MW specifically asks us to vacate the military judge's ruling regarding the Article 6b, UCMJ, discussion. For the reasons identified above relating to the *ex parte* hearing, Petitioner MW's petition requesting we vacate the military judge's ruling regarding the Article 6b, UCMJ, discussion in the

---

[10] In their untimely response to the Government's motion for reconsideration, trial defense counsel conceded trial counsel is required to exercise challenges for cause.

[11] The record does not show which members the Government would have challenged in light of the military judge's finding some evidence of unlawful influence. Though circuit trial counsel's notes indicated those members she intended to challenge before that finding, challenges were neither made by counsel nor ruled on by the military judge.

matter of *In re MW*, Misc. Dkt. No. 2022-15, is mooted by our vacating that ruling.

Additionally, Petitioner MW urges the court to declare a comprehensive right to confer with trial counsel during court-martial proceedings. We find Petitioner MW has not shown mandamus relief is warranted. Central to this conclusion is our determination that a writ of mandamus is not appropriate to establish an unrestricted right of an alleged victim of an offense to confer with trial counsel because that right is expressly subject to reasonable limitations.

Notwithstanding a victim's reasonable right to confer with trial counsel, a military judge has the responsibility to "[e]nsure that the dignity and decorum of the proceedings are maintained," and "exercise reasonable control over the proceedings." R.C.M. 801(a)(2)-(3); *see also LRM v. Kastenberg*, 72 M.J. 364, 372 (C.A.A.F. 2013) (noting that a victim's "right to a reasonable opportunity to be heard on factual and legal grounds" is "subject to reasonable limitations and the military judge retains appropriate discretion under R.C.M. 801"). Because the right to confer is subject to a condition of reasonableness, we decline to declare that Petitioner MW has an unrestricted right to confer with trial counsel during court-martial proceedings.

## V. CONCLUSION

The Government's petition for extraordinary relief in the nature of a writ of mandamus in the matter of *In re United States*, Misc. Dkt. No. 2022-09, is **DENIED**.

The Government's petition for extraordinary relief in the nature of a writ of mandamus in the matter of *In re United States*, Misc. Dkt. No. 2022-10, is **GRANTED** as specified in this order. The military judge's 16 October 2022 ruling granting the defense motion is **VACATED**. The Government will be afforded an opportunity for a hearing as specified in this order.

Based on the court's rulings above, the specific relief Petitioner MW seeks regarding the member selection conversation and the Article 6b, UCMJ, discussion, in the matter of *In re MW*, Misc. Dkt. No. 2022-15, is denied as **MOOT**.

The prospective remedy Petitioner MW seeks regarding Article 6b(a)(5) in the matter of *In re MW*, Misc. Dkt. No. 2022-15, is **DENIED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court