# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLEMING, COOPER, and SCHLACK
Appellate Military Judges

**R.C., by and through, Special Victims' Counsel,**
**Petitioner**
**v.**
**THOMAS P. HYNES,**
**Military Judge, Respondent**

**and**

**Staff Sergeant NATHANIEL P. COLEMAN,**
**United States Army, Real Party in Interest**

ARMY MISC 20250284

Headquarters, Fort Bragg
Tyler J. Heimann and Thomas P. Hynes, Military Judges
Lieutenant Colonel Joseph W. Shaha, Special Trial Counsel

For Petitioner: Christopher W. Genrich, Esquire; Captain Kyla M. Nichols, JA (on Petition for Extraordinary Relief and Supplemental Brief).

For Respondent: Colonel Richard E. Gorini, JA; Major Vy T. Nguyen, JA (on brief).

For Real Party in Interest: Lieutenant Colonel Autumn R. Porter, JA; Jonathan F. Potter, Esquire; Major Robert W. Rodriguez, JA; Captain Patrick R. McHenry, JA (on brief).

2 September 2025

---

OPINION OF THE COURT AND ACTION ON PETITION FOR
EXTRAORDINARY RELIEF IN THE NATURE OF
A WRIT OF MANDAMUS

---

FLEMING, Senior Judge:

The alleged victim (AV) petitioned for extraordinary relief, in the form of a writ of mandamus, requesting this court prohibit the military judge from releasing any of her mental health records to the parties at trial. The AV also alleges the

military judge failed to follow procedures regarding the handling of her mental health records. We deny AV's request for relief as her right to the issuance of writ is neither clear and indisputable nor is it appropriate under the circumstances.

## BACKGROUND

Staff Sergeant (SSG) Nathaniel Coleman (NC), the real party in interest, stands accused of seventeen specifications of domestic violence, in violation of Article 128b, Uniform Code of Military Justice, 10 U.S.C. § 928b (2019) [UCMJ]. Ten of these alleged specifications involve AV.

After charges were referred, SSG NC's defense counsel submitted a discovery request seeking the production of AV's mental health records. The government denied this request. Next, defense counsel filed a motion to compel production of the records. Defense proffered AV's ability to perceive events during the time of the alleged charged acts could have been impacted by a mental health diagnosis. Further, her prescribed medication could have impacted her ability to accurately perceive and recall memory or to control or moderate her behavior at the time she reported SSG NC's alleged misconduct. The government and AV's Special Victims' Counsel (SVC) opposed the defense motion by asserting a psychotherapist-patient privilege applied regarding AV's mental health records under Military Rule of Evidence [Mil. R. Evid.] 513.

A closed hearing was held in accordance with Mil. R. Evid. 513(e). During the hearing, defense counsel asserted they were only requesting records outside the boundaries of the privilege and cited our superior court's holding in *United States v. Mellette*, 82 M.J. 374, 381 (C.A.A.F. 2022) (determining evidence of visits to mental health care providers, treatments provided and recommended, and any diagnoses made are not privileged under Mil. R. Evid. 513 [hereinafter "*Mellette* records"]). The AV's SVC asserted all of AV's mental health records were privileged because a new executive order, Executive Order 14,130,[1] promulgated post-*Mellette*, had expanded the types of mental health records afforded protection under Mil. R. Evid. 513. The military judge found the new executive order did not expand the privilege in Mil. R. Evid. 513 and granted the defense motion to compel production. The military judge then drafted an order to the Womack Army Medical Center (WAMC), specifying the information to be released. The order also directed WAMC to put the responsive information in a memorandum rather than releasing AV's actual mental health records.

An initial submission from WAMC was provided to the military judge. After discovering the records in this submission were not sealed, were not in the requested

---

[1] Executive Order 14,130, 89 Fed. Reg. 105,343, 105,364 (December 20, 2024) [Exec. Order 14,130].

memorandum format, and appeared to contain confidential psychotherapist-patient privileged communications, the military judge immediately halted any further review of the records. After soliciting input from the parties and AV's SVC, the military judge returned the entire initial submission back to WAMC.

The military judge then issued a second order to WAMC records personnel, requiring the production of a "list" of AV's "mental health diagnoses;" "prescriptions related to such . . . diagnosis or diagnoses;" and "the dates of any mental health appointments." (emphasis in original). Like the initial order, the memorandum requested from WAMC was to be "*printed, sealed,* and *available for collection* by [government counsel]." (emphasis in original). To ensure privileged records were not inadvertently disclosed, the military judge further ordered that the "copies of actual mental health records **SHALL NOT** be provided . . . ." (emphasis in original).

Shortly thereafter, the military judge received a second submission in a sealed envelope from WAMC containing AV's actual mental health records. This second WAMC submission was still not in the memorandum format directed by the military judge's order. However, based on the organization and grouping of the records, the military judge was able to determine that one, and only one, distinct group of records appeared to contain information that was privileged under Mil. R. Evid. 513. In his initial look at the records, the military judge stated he reviewed only "one of [the] notes" and immediately "ceased [to] review" anything else in a distinct group of records because they appeared to contain privileged communications. Because of this ability to discern a distinct grouping, the military judge was able to separate the second submission into two distinct categories: (1) the *Mellette* records which were not protected under Mil. R. Evid. 513; and (2) records containing confidential communications [hereinafter "privileged records"].[2]

The military judge sealed the privileged records in the WAMC envelope and did not conduct a review of them. Next the military judge informed the parties and AV's SVC of the intent to release the *Mellette* records to the parties. The military judge determined "[a]fter two failed attempts [by WAMC] the required [*Mellette*] information [was] now readily available and appropriate for disclosure without violating the AVs privilege." Before releasing the *Mellette* records, however, in an abundance of caution, the military judge provided a copy to AV's SVC. The military judge directed AV's SVC to review the records and "let me know with specificity (highlighting) if you believe anything in these records contains [Mil. R. Evid.] 513 privileged information."

---

[2] In his ruling, the military judge entitled the privileged records as "[d]ocuments containing communications."

3

In response to the military judge, AV's SVC renewed her objection to the release of any of AV's mental health records by again asserting the new executive order applied and protected all of the information.[3] The AV's SVC also requested the military judge recuse himself and return the entire second submission to WAMC.

The military judge again ruled the new executive order did not abrogate the Court of Appeals for the Armed Forces' [CAAF] holding in *Mellette* and affirmed the decision to release AV's *Mellette* records. The military judge declined to return the second submission to WAMC because the *Mellette* records were responsive in substance to his order, if not in the format he ordered, and he was "concerned with the ability of [WAMC] to properly complete the ordered memorandum after failing twice." He also "conclude[d] no grounds for challenge exist[ed] . . . ." against him and denied AV's request for his recusal.[4]

AV then sought a stay of the military judge's ruling and requested this Court issue a writ of mandamus to prevent the military judge from turning over any of her mental health records.

## LAW AND DISCUSSION

### A. Writ of Mandamus

"Jurisdiction is a question of law that [we] review[] de novo." *LRM v. Kastenberg*, 72 M.J. 364, 367 (C.A.A.F. 2013). Further, "[t]he courts of criminal appeals are courts of limited jurisdiction, defined entirely by statute." *United States v. Arness*, 74 M.J. 441, 442 (C.A.A.F. 2015) (citing *United States v. Politte*, 63 M.J. 24, 25 (C.A.A.F. 2006)).

Article 6b(b), UCMJ, defines a victim as one "who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense

---

[3] The AV's SVC did not respond to the military judge's query with "specificity" (or any other method) as to whether any of the records he forwarded to the SVC contained any "[Mil. R. Evid.] 513 privileged information."

[4] Shortly after this ruling, the initial military judge left the bench due to a previously scheduled permanent change in station, and a new military judge was detailed to this case. This change in military judges now serves to moot the recusal issue. *See United States v. Wall*, 79 M.J. 456, 459 (C.A.A.F. 2020) (discussing the court's general adherence to the principle that issues not ripe for appeal cannot be decided). Even assuming arguendo this issue was not mooted, we do not discern a necessity for recusal in this case where the military judge briefly viewed a document which *potentially* contained privileged information, immediately ceased his review, and then sealed the records.

under [the UCMJ]." Article 6b(e)(1), UMCJ, further provides a victim "may petition the Court of Criminal Appeals for a writ of mandamus to require the . . . court-martial to comply with [a pertinent] section (article) or rule" "[i]f the victim . . . believes that . . . a court-martial ruling violates the rights of the victim . . . ." As pertinent to AV's case, she asserts a violation of her rights occurred under Article 6b, UCMJ, and Mil. R. Evid. 513. Because AV disputes the military judge's ruling to disclose mental health records she believes to be protected by Mil. R. Evid. 513, she may file a petition for a writ of mandamus in this court, and we have jurisdiction to review it.

A writ of mandamus, "is a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *EV v. United States*, 75 M.J. 331, 332 (C.A.A.F. 2016) (quoting *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380 (2004)). Thus, to prevail on a request for a writ, the petitioner must show three things: "(1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (citing *Cheney*, 542 U.S. at 380-81).[5] "To justify reversal of a discretionary decision by mandamus, the judicial decision must amount to more than even gross error; it must amount to a judicial usurpation of power, or be characteristic of an erroneous practice which is likely to recur." *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983) (internal quotation marks and citations omitted).

We conclude, as discussed in-depth below, AV has not demonstrated the right to issuance of a writ is clear and indisputable. We first address the impact of the new Exec. Order 14,130 on the scope of Mil. R. Evid. 513 before turning to a discussion regarding the procedures used by the military judge when reviewing AV's mental health records.

*B. Executive Order 14,130 and the Scope of Mil. R. Evid. 513*

The AV argues Exec. Order 14,130 expanded the scope of Mil. R. Evid. 513 in such a way that the CAAF's central holding in *Mellette*—that appointment history, diagnoses, and prescriptions or treatments are not privileged—has been abrogated. We disagree.

---

[5] As to the first prong, absent an order from this court, AV's records would be divulged to the parties in accordance with the military judge's order, and there is no other authority from whom AV can request relief regarding the applicability of the new executive order. There are, therefore, "no other adequate means to attain relief." *Cheney*, 542 U.S. at 380 (internal quotations and citation omitted). As to the third prong, were we to conclude the records in question were protected by Mil. R. Evid. 513, contrary to the military judge's ruling, relief from this court via the issuance of a writ would be "appropriate under the circumstances." *Id.* at 381.

Statutory construction is a matter of law we review de novo. *United States v. Vargas*, 74 M.J. 1, 5 (C.A.A.F. 2014). In *Mellette*, the CAAF interpreted the text of Mil. R. Evid. 513(a), in existence at the time, which is provided below:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a *confidential communication* made between the patient and a psychotherapist or an assistant to the psychotherapist . . . if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

82 M.J. at 377-78 (emphasis added).

The CAAF explicitly rejected any contention that the President intended "confidential communications" to include "routine medical records, that do not memorialize actual communications" like "records that contain diagnoses and treatment." *Id.* at 378. In discussing the President's intent, the CAAF recognized the President's authority to amend military rules of evidence, stating:

> [t]he President has the authority, within the limits of the Confrontation Clause, to define the scope of the patient-psychotherapist privilege as broadly as he sees fit . . . . [and] the President could have [but did not] use[] express language that unambiguously reflected that intent. Indeed, other jurisdictions have done exactly that.[6]

*Id.*

After the CAAF decided *Mellette*, the President signed Exec. Order 14,130, codified as the "2024 Amendments to the Manual for Courts Martial," which became effective on 20 December 2024, and slightly modified the language of Mil. R. Evid. 513. The amended text of Mil. R. Evid. 513(a) now states:

> A patient has the privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication, *including records of such communications*, made between the patient and a psychotherapist or an assistant to the psychotherapist, in a case arising under the Uniform Code of Military Justice, if such communication was

---

[6] Our superior court provided examples from other jurisdictions, such as Florida, of language that would serve to demonstrate a clear intent to protect mental health diagnoses. *Id.*

made for the purpose of diagnosis or treatment of the patient's mental or emotional condition.[7]

Despite the SVC's urging, we read this new language, approved by the President, as a mere clarification that the privilege in Mil. R. Evid. 513 also covers a record documenting a "confidential communication" made orally or in writing between the patient and their psychotherapist. A plain reading of the language of the amended Mil. R. Evid. 513 does not serve to expand the scope of the privilege to other types of records involving "diagnoses, treatments, and prescriptions."[8] *See Mellette*, 82 M.J. at 378 ("here, the President chose a different path, including only confidential communications made between the patient and a psychotherapist with no mention of any other types of evidence.").

We hold the amended Mil. R. Evid. 513(a) did not expand the psychotherapist privilege. Pursuant to *Mellette*, the controlling case law, the military judge did not err by ordering the release of *Mellette* records to the parties.[9]

*C. Procedural Requirements of Mil. R. Evid. 513*

AV also alleges the military judge erred: (1) by violating the procedural rules imposed by Mil. R. Evid. 513(e); and (2) by reviewing, and then also ruling to release, her records "in a format that violated" his order. We disagree with both contentions.

---

[7] The italicized language captures the new addition by the President in the executive order. Two minor alterations were also made—modifying "a privilege" to "the privilege" in the first sentence and removing "facilitating" from the phrase "for the purpose of facilitating diagnosis or treatment" in the last sentence.

[8] We pause to note, shortly after the implementation of Exec. Order 14,130, Congress directed the Secretary of Defense to "analyze the advisability of modifying rule 513 . . . to include diagnoses . . . and treatments . . . ." Pub. L. No. 118-59, 138 Stat. 1773, 1908. Although not dispositive to our analysis, we view this solicitation as additional circumstantial evidence that the current scope of the amended Mil. R. Evid. 513 is not as broad as AV would have us find.

[9] An opinion by a sister service court concurs with our interpretation of the new executive order holding "the added language merely enumerated the unremarkable clarification that the privilege prohibits the disclosure whether that be through testimony, statements, or the production of records. This additional language did not change the nature or definition of confidential communications." *In re DD*, 2025 CCA LEXIS 129, at *4 (A.F. Ct. Crim. App. 21 Mar. 2025).

> When a party seeks an interlocutory ruling . . . that places the production or admission of mental health records of a patient other than the accused in dispute, . . . M.R.E. 513(e) [is triggered] to protect the patient's privacy interests. The procedures in M.R.E. 513(e)(1) and M.R.E. 513(e)(2) apply to *all* instances in which a party seeks the production or admission of a patient's mental health records or communications, while the stricter procedures in M.R.E. 513(e)(3) *only* apply when the moving party seeks production or admission of mental health records that are protected from disclosure by the psychotherapist-patient privilege in M.R.E. 513(a).

*H.V.Z. v. United States*, 85 M.J. 8, 15 (C.A.A.F. 2024) (second emphasis added).

As required, the military judge properly applied the procedural requirements set forth in Mil. R. Evid. 513(e)(1) and (2).[10] Staff Sergeant NC, through counsel, filed a motion to produce AV's *Mellette* records. Following a closed hearing, the military judge determined the records the defense sought were not privileged and were otherwise relevant and necessary to defense's preparation. *See* Rule for Courts-Martial [R.C.M.] 703(e).

The military judge then ordered WAMC to produce AV's information in a particular format. As to WAMC's first submission, the military judge promptly halted any review and acquiesced to AV's request to return the entire submission to WAMC.[11]

Desperately endeavoring to avoid again receiving any privileged communications or records, the military judge issued a second order directing a particular format and clarifying what should and should not be released by WAMC. His intent is evidenced, in no uncertain terms, by the language of the second order directing that WAMC "**SHALL NOT**" (bolded, capitalized, and underlined) release any of AV's actual mental health records but instead to provide the required *Mellette* information in a particular format. Although this second attempt was similarly

---

[10] Military Rules of Evidence 513(e)(1) and (2), in pertinent parts, requires the party seeking the introduction of any mental health record of a patient to file a written motion five days prior to the entry of pleas, and prior to ruling, the military judge must conduct a closed hearing at which the patient "must be afforded a reasonable opportunity to attend . . . and be heard."

[11] *Contra B.M. v. United States*, 84 M.J. 314, 322 (C.A.A.F. 2024) (Ohlson, C. J., concurring) (noting the "unenviable position" the military judge placed herself in by reviewing protected mental health records, erroneously turned over by a mental health facility, and discovering impeachment materials, the disclosure of which was necessary for the real party in interest to receive a fair trial).

unsuccessful, we find the military judge's subsequent actions regarding WAMC's second submission were not erroneous.[12]

In reviewing his subsequent acts, we must first recognize, at the moment the military judge opened WAMC's second submission, he was neither attempting, nor required, to conduct a Mil. R. Evid. 513(e)(3) *in camera* review of *"protected records or communications."* (emphasis added). He had already ruled and ordered – no *protected records or communications* were to be produced by WAMC. Staff Sergeant NC only sought, and the military judge only ordered, production of AV's "nonprivileged mental health records, [so] only the procedures in M.R.E. 513(e)(1) and M.R.E. 513(e)(2)," as opposed to Mil. R. Evid. 513(e)(3), applied. *H.V.Z.*, 85 M.J. at 15.[13]

The moment the military judge determined WAMC had, again, not complied with his order by providing protected records, the military judge immediately "ceased" looking at any erroneously released *protected records or communications* and sealed them. Based on the organization and grouping of the second submission, the military judge was able to separate the second submission into two distinct

---

[12] As the military judge stated in his ruling, "[d]espite taking careful steps to prevent the release of privileged materials, the materials were 'dumped on the court'- twice."

[13] Military Rule of Evidence 513(e)(3) requires an in camera review of *protected records or communications* and order their disclosure only if there is "a reasonable likelihood that the records . . . would contain or lead to the discovery of evidence admissible under an exception to the privilege;" "that the requested information meets one of the enumerated exceptions under . . . [the] rule;" the information is not cumulative; and "the party made reasonable efforts to obtain the same or substantially similar information through non-privileged sources." Additionally, we reject any assertion by AV that the military judge was required to follow the procedures in Mil. R. Evid. 513 (e)(4) (outlining procedures for the release of mental health information pursuant to a military judge determining an enumerated exception exists). Military Rule of Evidence 513(e)(4) is inapplicable as we are not dealing with the release of information under an enumerated exception. The military judge was only seeking to release information which CAAF had already determined merited no privilege (i.e., *Mellette* records). Stated more simply - there is no need to apply procedures involving an enumerated exception when no privilege existed for the information in the first place.

categories – preventing him from sifting through commingled protected records and allowing him to proceed with reviewing only *Mellette* records.[14]

When faced with the choice of ordering WAMC, for a third time, to comply with the requested formatting directed in his order regarding AV's information, the military judge chose the path that allowed the court-martial to proceed while eliminating the risk of AV's privilege being violated.[15] As stated by the military judge, "the records [he ruled to release] appeared to be what the hospital would have produced if the Court had simply directed the hospital to provide *Mellette* responsive material instead of utilizing a [particular] format." The military judge, as the authority directing a particular format, was free to revise his formatting dictate and release AV's *Mellette* records in the manner provided by WAMC. His solution also served to address a legitimate "concern[] with the ability of [WAMC] to properly complete the ordered memorandum after failing twice."

The military judge did not err. The AV has failed to establish the issuance of a writ is clear and indisputable. Further, the military judge ameliorated any risk to AV's rights by: (1) segregating and sealing any of her privileged mental health records erroneously provided in WAMC's second submission; and (2) giving AV's SVC the opportunity to review and assert privilege, prior to disclosure to the parties,

---

[14] "[If a] military judge discovers that privileged material is commingled with nonprivileged material, he or she should immediately stop reviewing those records." *B.M.*, 84 M.J. at 322 (Ohlson, C.J., concurring). Although WAMC's second submission contained privileged materials, they were not "commingled" in such a manner with nonprivileged materials as to impact the military judge's ability to "immediately stop reviewing [the protected] records." *Id.*

[15] The military judge, as the presiding officer of the court-martial, is tasked with "exercise[ing] reasonable control over the proceedings." R.C.M. 801(a)(3); *see also B.M.*, 84 M.J. at 323 (Ohlson, C.J., concurring) (discussing alternatives to a military judge reviewing materials such as the parties agreeing "to enter into a stipulation of fact . . . . [or a] related approach . . . for the military judge to pose interrogatories to the psychotherapist that are narrowly tailored."). In addition to the potential solutions proposed by Chief Judge Ohlson, the military judge could have also considered issuing a subpoena to the appropriate WAMC employee to testify regarding their noncompliance with the military judge's order, followed by a warrant of attachment if that WAMC employee refused to testify. R.C.M. 703(g)(3)(H) discussion ("A warrant of attachment . . . may be used when necessary to compel a witness to appear or produce evidence . . . . A warrant of attachment is a legal order . . . directing [an] official to have the person named in the order brought before a court.").

over any records in the second submission that the military judge deemed non-privileged.[16]

### CONCLUSION

The AV's request for extraordinary relief in the form of a writ of mandamus is DENIED. Our stay of the military judge's order, which prohibited the release of AV's *Mellette* records, as well as our stay of the proceedings are VACATED.

Judge COOPER and Judge SCHLACK concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

---

[16] *See B.M.*, 82 M.J. at 320 (finding a victim's right to assert a privilege was not diminished when the "military judge ordered the[] [records] sealed and neither [the CAAF] nor the [lower court] . . . ordered them unsealed.").